26185. NATIONAL UNION FIRE INSURANCE COMPANY
*v.* JENKINS.

DECIDED SEPTEMBER 11, 1937. REHEARING DENIED SEPTEMBER 30, 1937.

*Smith, Smith & Bloodworth, Estes Doremus,* for plaintiff in error.

*McElreath, Scott, Duckworth & DuVall, J. L. Riley,* contra.

GUERRY, J. Mrs. Mary R. Jenkins, trading as Jenkins Warehouse, recovered a judgment against the National Union Fire Insurance Company. The cotton warehouse and contents owned by Mrs. Jenkins were destroyed by fire on the night of January 28, 1935. The defendant on January 11, had issued a policy of insurance for $2000, covering certain bales of cotton stored in this warehouse. This cotton had been covered by an insurance policy issued by the Rochester-American Insurance Company. On January 6, the Rochester-American Insurance Company wired its agent, the Fisher Insurance Agency at Newnan, Georgia, to cancel its policies on the cotton in Jenkins Warehouse. On January 7, the Fisher Insurance Agency wrote to A. L. McDonald Insurance Agency in Atlanta as follows: "A. L. McDonald Ins. Agency, Atlanta, Ga. Dear Sirs: Re: Jenkins Warehouse, Dooling, Ga. I regret to inform you that it will be necessary for you to send me additional forms for Roch. Am. policies 10279, 10280, 10281, as I will have to put same in another company; please let these come forward in the next few days, as I would like to have transfer made inside of the next ten days." On January 16, the Fisher Insurance Agency, which was also agent for the defendant company, issued the policy sued on and sent it to A. L. McDonald Agency in Atlanta. At the same time the Fisher Agency wrote to the McDonald Insurance Agency the following letter: "Enclosed please find National Union policies Numbers F 161, 162, and 163, covering insurance on the Jenkins Warehouse at Dooling, Georgia. The above numbered policies replace Rochester-American policies numbers 10279, 10280, and 10281. The company requested us to cancel these policies on January 6, and we hope you will be good enough to see that same are returned to this office at once." It appears from the evidence that the McDonald Insurance Agency and the J. L. Riley Insurance Agency had the same officers and offices, and handled their business as if they were one agency. On January 18, J. L. Riley & Company wrote to J. A. Jenkins, the husband of the plaintiff, as follows; "In

accordance with the instructions issued by the underwriters, we are compelled to give you this letter as legal notice for the cancellation of the following policies, which please return to us promptly, and we will send you a credit memorandum for the pro-rata unearned premiums thereunder: No. 10279—Rochester-American—$5000. No. 10280—Rochester-American—$2000. No. 10281—Rochester-American—$3000. We are pleased to advise that we have replaced the amount canceled, and the new policies will come forward to you under separate cover. Although we regret the necessity for making this revision, we have no other alternative and we trust you will appreciate our position." On January 18, the Rochester-American Insurance Company wrote to the Fisher Insurance Agency as follows: "Please return the canceled policies in caption, as requested in our telegram of January 6. Won't you please give the above matter your prompt attention?" On January 25, J. L. Riley & Co. wrote to J. A. Jenkins as follows: "Please return to us at once the canceled policies listed in our letter of January 18, or advise us when we may expect them. We contemplate sending you new policies within the next few days." On January 27, J. A. Jenkins mailed the policies of Rochester-American Insurance Company and wrote to J. L. Riley & Company as follows: "Your letter of the 25th, relative to return of insurance policies in connection with above warehouse, received this morning, also your letter of the 18th; and I am enclosing same herewith. The delay in return of these policies has been due to the fact that I was in the hospital and unable to look after same. In fact I was in the Wise Sanitarium, Plains, Ga., when it burned last Thursday night, and was transferred back to my home Friday, where I am still confined in bed, but hope to be up and able to go within the next week or ten days. I note you have replaced the insurance and will forward policies within few days, which is very satisfactory. Again thanking you for your very prompt and efficient manner in handling this matter," etc. Both policies of Rochester-American Insurance Company and the policy of the defendant covering the same cotton were in the hands of J. L. Riley & Company or McDonald Insurance Agency on January 28, the night the fire occurred.

■ If the policy of the Rochester-American Insurance Company was still in force, the defendant is not liable. If the Rochester-

American Insurance Company's policies were canceled, the defendant is liable. The evidence discloses that J. L. Riley & Company handled the insurance for Jenkins Warehouse; that is, they had been keeping the cotton in the warehouse insured since 1918. A. L. McDonald testified: "I had kept that warehouse insured from the first after it was placed. I had it insured in several different companies. We just brokered the business with the Rochester. Sometimes we broker it with the National Union. We broker through the Fisher Agency, Newnan, Georgia. The same agents in Newnan handled both Rochester and National Union. . . I undertook to insure this man's property and keep it insured in accordance with his instructions." On February 5, after the fire, A. L. McDonald Agency sent to Fisher Agency a check for $108, less ten per cent. commission, in "partial payment National Union premiums, Jenkins Warehouse, Dooling, Georgia," and on April 23 sent a check in payment of the balance due on this premium. This check was accepted by the Fisher Agency. Mr. Farmer of the Fisher Agency testified: "On January 28, 1936, I carried the coverage on Jenkins Warehouse. As to what company, I don't know, and I don't think McDonald knew. . . I mailed him the National Union policies. The policies were there with him. As to which one did I intend to have the coverage, I did not care. I did not intend for any of them, it didn't make any difference to me. As long as I got my commission of $180 I was satisfied." It appears that when Fisher Insurance Agency issued a policy of insurance for clients sent to them by the McDonald Insurance Agency, they sent the policies and charged the premiums to McDonald Insurance Agency. "In the absence of a mutual agreement to cancel a policy of fire insurance, the right of either party to terminate depends upon a reservation of such right in the policy." 26 C. J. 136. The policy of the Rochester-American Insurance Company is not made a part of the record in this case, and we have no knowledge of its terms, although it appears that J. L. Riley & Company assumed to act for that company, and, as per the letter of January 18, gave plaintiff legal notice of the cancellation. Five days is a usual requirement as to notice of cancellation. "Regardless of the provisions of a policy as to cancellation, the policy may be canceled by mutual consent." 5 Cooley's Ins. 4629. The Rochester-American Insur-

ance Company on January 6, notified its agent, the Fisher Agency, to cancel these policies issued to the plaintiff. On January 7, the Fisher Agency notified the plaintiff's broker, who placed the insurance, that they would cancel the Rochester-American policy and reinsure the property in another company for which they were also agents, and on January 16 they issued the policy sued on and mailed it to plaintiff's brokers. It is undisputed that McDonald or Riley was the continuing agent of the plaintiff to keep the warehouse and its contents insured, with full power to select the insurer. An assent to a cancellation by a broker with such authority would bind the plaintiff in this case. *National Union Fire Insurance Co.* v. *Macon Hardwood Lumber Co.*, 24 *Ga. App.* 726 (102 S. E. 180); 26 C. J. 140-144. Irrespective of notice of cancellation or assent by the broker with authority to act, the insured assented to the notice to cancel, by surrendering the policy to its broker who demanded it at the request of the insurer. This conduct was sufficient to show a meeting of the minds of the parties to such cancellation. "Thus a voluntary surrender of the policy with the understanding that it is canceled and the acceptance of credit for the unearned premiums as of the date of such surrender waives the right of the insured to the specified number of days notice. So the surrender of the policy and the acceptance of another as a substitute therefor cancels the original policy at once." 26 C. J. 143, § 168; *Home Insurance Co.* v. *Challahoochee Lumber Co.*, 126 *Ga.* 334 (55 S. E. 11). "The surrender of the policy to a duly authorized agent, with intent on the part of both parties to cancel it and apply the returned premium to other policies, will effect a cancellation though the agent does not in fact return the policy to the company." 5 Cooley's Ins. 4642. "If the parties all mutually agree and understand that the policy is to be canceled, it is not necessary formally to surrender the policy or tender the unearned premiums." 6 Couch's Enc. Ins. § 1407.

The court was authorized to find from the evidence adduced that the policy issued by the defendant was in force, and that a loss occurred for which the defendant was liable.

■ The defendant also filed a plea setting up that the plaintiff, Mrs. Mary Jenkins, had for four years been carrying on the warehouse business under a fictitious name, to wit, Jenkins Ware-

house, without registering said trade-name in the clerk's office of either Macon or Dooly County, she being a resident of Macon County and the warehouse being located in Dooly County; and that because of such failure to register she was not entitled to recover under this policy. Over objection of the defendant, the plaintiff introduced an affidavit made by her in 1931, registering "Jenkins Warehouse" in accordance with the trade-name act. This affidavit was marked, "Recorded Mar. 10, 1931. R. G. Lumsden, Clerk," and identified by Jenkins as the original. A witness for the defendant testified that he searched the records of the clerk's office of Dooly County, and did not find any affidavit from Mrs. Jenkins on file therein. On cross-examination he testified that he found an "index to trade-names," and under the letter "J" he found that Mrs. Jenkins had filed an affidavit, on March 10, 1931, setting out the name of the business and her residence. He also found that this was cross-indexed. "That index record is there of Jenkins Warehouse, Mrs. Mary R. Jenkins operating as owner, residence, Montezuma, Georgia, date Mar. 10, 1931." The witness testified that he was informed that the clerk had loaned this affidavit to Mr. or Mrs. Jenkins to be used in court. Mr. Jenkins testified he got the affidavit out of the clerk's office in Dooly County, to use in this case, and that he filed it there in 1931, and that the affidavit introduced in evidence was the original. Irrespective of the admissibility of this original affidavit, the burden of showing that Mrs. Jenkins had not complied with this law was upon the defendant. We think the defendant's own evidence demanded the verdict. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*