Horatio M. FARRAR, Administrator of the Estate of Claire Lynne Farrar, deceased, Plaintiff-Respondent,

v.

Lloyd MAYABB, Defendant,

(Phoenix Assurance Company of New York, Garnishee-Appellant).

No. 7756.

Springfield Court of Appeals.

Missouri.

July 3, 1959.

Motion for Rehearing or in the Alternative to Transfer to Supreme Court Overruled Aug. 12, 1959.

Harold J. Fisher, Allen, Woolsey & Fisher, Springfield, for garnishee-appellant.

Neale, Newman, Bradshaw, Freeman & Neale, F. B. Freeman, Donald J. Hoy, Springfield, for plaintiff-respondent.

RUARK, Judge.

The question in this case is whether or not an automobile liability policy was cancelled.

Horatio M. Farrar, administrator of the estate of Claire Lynne Farrar, obtained a judgment against Lloyd Mayabb for damages suffered in an automobile collision.[1] Thereafter the administrator garnisheed the appellant, Phoenix Assurance Company of New York, and obtained judgment below.

The facts concerning the insurance policy are as follows: On July 12, 1954, a Mrs. Jones operated an insurance agency and brokerage business in Springfield known as the "Glenn W. Jones Agency."[2] Lloyd Mayabb, 28 years old, a laborer with an eighth grade education, bought a 1950 Chevrolet for $695, $450 of which was represented by encumbrance. Having been directed to Mrs. Jones by relatives, he took out (July 12, 1954) an insurance policy covering collision (with loss payable clause) and "five and ten" liability. This policy was issued by the Insurance Company of Texas and was signed by the Glenn W. Jones Agency as authorized representative. Mayabb did not ask for insurance in any particular company. The effect of his testimony is that he just wanted coverage and he left it to Mrs. Jones to select the insurer. The premium on this policy amounted to $87. Mayabb did not have the money and he agreed to pay her $10 per month. He testified that he agreed to pay the $10 for 12 months of the year. He said that he continued these payments to Mrs. Jones from that time (July 12, 1954) to and including December 1, 1956. (We note, however, some of the later receipts are for $5.) When asked why he paid in more than the premiums amounted to, he stated he "just didn't give it much thought"; that he just didn't pay any attention to it; that he left those things up to Mrs. Jones; that all he was interested in was getting the insurance and that he left it up to Mrs. Jones to take care of it for him, "except receiving notice for me. I didn't leave that up to her." His testi-

---

1. For the shameful and distressing story of that somber occasion, see State v. Mayabb, Mo., 316 S.W.2d 609.

2. By time of trial she had been convicted, was in the penitentiary, and her agency office had been closed.

mony is susceptible of the interpretation that he wanted insurance so that he could drive his car with comparative impunity and was not much interested in the process or mechanics of how he got it.

While the record is rather barren in this respect, we think it is evident that his insurance was renewed by issuance of a similar policy in July of 1955. In October 1955 he had a wreck with his 1950 Chevrolet, collected some insurance money, purchased a 1951 Chevrolet, and either took out a new policy with the Insurance Company of Texas or transferred the coverage of the old policy to the new automobile. He says that Mrs. Jones "took it upon herself" to make this transfer, although we do not see how she could have done this had he not given her information concerning the new car. The coverage on the 1951 Chevrolet was for only liability, however. He says that he continued to make the payments to Mrs. Jones at the rate of $10 per month. In July 1956 he received a letter from Mrs. Jones enclosing the policy in the Phoenix Assurance Company which is involved in this case. He says the letter stated that the old Texas policy had been "cancelled" and she was "fixing me up" with another policy. We note, however, the issue date (July 12, 1956) is the anniversary date of the first policy, and there is indication in the record that the Texas company had become insolvent. The new policy was a "five and ten" liability and the premium was $43

Mrs. Jones did not represent the Phoenix Assurance Company. She placed such policy (along with a number of other policies) with the Williams-Dando Agency, which had authority to issue.

The policy bore on its face the name and address of the insured as *Lloyd Mayabb, Rt. 1, Pleasant Hope, Missouri.* It provided, among other things:

"This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice."

Despite the fact that the insured had overpaid his premium to Mrs. Jones, she did not remit to the insurer, and on August, 27, 1956, because of nonpayment of premium, the Williams-Dando Agency issued a notice of cancellation. (It also issued some 200 or 250 other notices of cancellation to clients of Mrs. Jones.) The notice it issued to the insured was addressed to *"Lloyd McNabb, Route 1, Springfield, Missouri."* He says he never got the notice, and there is no serious contention that he did. Williams-Dando also mailed a copy of this notice to Mrs. Jones, and it is on the notice to her that the garnishee depends for its release from liability. Mrs. Jones did not inform Mayabb of the cancellation and he continued to make payments to her until December 1, 1956.

On October 18, 1956, occurred the collision which involved Miss Farrar, whose administrator is the garnishor-respondent.

■ There is no problem of construction involved. The policy plainly and explicitly provides the method by which the insurer may cancel, i. e., by mailing of notice *to the named insured at the address shown in the policy.* It is not susceptible of an interpretation which would permit the mailing of notice to any person other than the named insured, nor to any address except that stated in the policy. The Missouri courts have held, in an unbroken line of decisions, that strict compliance with all the requirements in regard to notice is a prerequisite to cancellation.[3] Obviously a no-

3. Farmers Mutual Hail Ins. Co. v. Minton, Mo.App., 279 S.W.2d 523; Dyche v. Bostian, Mo.App., 229 S.W.2d 25; Home Ins. Co. v. Horrell, 206 Mo.App. 352, 227 S.W. 830; Continental Ins. Co. of New York v. Phipps, Mo.App., 190 S.W. 994; 45 C.J.S. Insurance § 449, p. 83.

tice addressed to Lloyd McNabb of Route 1, Springfield, Missouri, is no notice to Lloyd Mayabb of Route 1, Pleasant Hope, Missouri, when not received by him.

But the insurer-appellant attacks from the flank. It contends that Mrs. Jones was agent for the insured for the purpose of receiving notice of cancellation. The theory is bottomed upon the proposition that, no matter what the policy provided in respect to who should be notified, the provision in respect to notice being for the benefit of the insured, Mayabb had the right, in order to accommodate his own purpose and convenience, to appoint an agent, an alter ego, to stand in his shoes and receive such notice on his behalf; that his course of dealing with Mrs. Jones constituted her his general agent, and as such she had his implied authority to receive and accept a notice of cancellation for him.

The burden of proving cancellation is on the party asserting it,[4] and the implied authority arising from a course of conduct which permits notice to some other person than the insured, contrary to the explicit provision that notice shall be given "to the named insured,"[5] is a relinquishment of a stringent provision in the policy which is to the insured's benefit. The right to rely upon this provision for personal notice is a present and continuing right. The voluntary relinquishment and resultant dissolution of this right, however it may be done (but especially by "implication") is, if not a waiver, so closely akin thereto that we are unable to make distinction, and should be governed by the same rules of proof which concern the finding of waiver. Since *intent*, although it may be inferred, is an essential element of waiver,[6] we believe that the facts which would justify the finding that the insured has impliedly appointed an agent to receive notice of cancellation for him (in direct contravention of the plain words of the policy providing for personal notice) should establish such "waiver" by strong and cogent evidence which clearly shows or from which it can be clearly implied that such was the intention of the insured.

In the ordinary circumstance the broker is the agent of the person who employs him to procure the insurance.[7] In this instance Mrs. Jones was agent of the insured, Mayabb, because he went to her and requested her to get insurance.

The general rule is that a broker's authority is limited to the things necessary, incidental to, or reasonably expected to be done in the procurement of the insurance. Once it is procured, the authority ends.[8] But the rule is also, and this is what the appellant relies upon, that where the broker or agent is given authority to select the companies and to procure and maintain insurance in force, and generally to accomplish the purpose of seeing that the insured

4. 45 C.J.S. Insurance § 461a, p. 129, et seq.

5. The facts in this case will amply illustrate why the vital provision in respect to *personal* notice is important to the ordinary man who takes out insurance for protection and expects to rest content in thought that he is "protected" until and unless he receives notice to the contrary. Ordinarily he does not expect to ride herd on his insurance agent or broker.

6. 92 C.J.S. Waiver, pp. 1041, 1056; Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877, 878; Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898, 904; Gary Realty Co. v. Kelly, 278 Mo.

450, 214 S.W. 92, 99; Wall Inv. Co. v. Schumacher, 344 Mo. 225, 125 S.W.2d 838, 839.

7. H & H Manufacturing Co. v. Cimarron Ins. Co., Mo.App., 302 S.W.2d 39, and cases cited at loc. cit. 43.

8. Restatement of the Law of Agency, secs. 34, 35; McCartney v. State Ins. Co., 45 Mo.App. 373, 382; Pringle v. Aetna Life Ins. Co., 123 Mo.App. 710, 101 S.W. 130, 131; Smith v. American Automobile Ins. Co., 188 Mo.App. 297, 175 S.W. 113, 115; Park v. Fidelity & Casualty Co., Mo.App., 279 S.W. 246, 249; Kohler v. New Orleans Ins. Co., C.C.E.D. Mo., 23 F. 709.

is at all times covered with the desired protection—in other words, to take the complete responsibility in regard to securing and keeping the insurance in force—then the broker becomes the "general agent" of the insured and as such is authorized to receive notice of cancellation on behalf of the insured.[9]

We think there is no magic in the words "general agent" or "special agent." The extent of authority conferred is simply a matter of degree.[10] Hence in following appellant's theory the question is simply the extent of authority conferred on Mrs. Jones by Mayabb. There is no contention that he *expressly* appointed her as his agent to receive a notice of cancellation. So the inquiry is reduced to the question, was there such implied authority? Do the facts compel the inference that such authority existed? Here now we wish to point out that there is no evidence of any course of dealing with the Williams-Dando Agency or the Phoenix Assurance Company which would induce the belief that Mrs. Jones was acting as anything but an insurance broker, no reliance upon a "general agency" or authority to cancel, no misrepresentation (except to Mayabb), no holding out, no "apparent authority," except to procure insurance, no estoppel. The facts in this case must be considered (as is different in many cases, because "implied authority" is so often associated, and sometimes confused, with "apparent authority") for the purpose of determining the relationship purely as it existed between Mrs. Jones, the broker, and Mayabb, the insured, as an actual fact, and *not* how some other person might have viewed it.

We have examined a number of the cases which hold that the appointment of an insurance broker as "general agent" to maintain insurance in force carries with it authority to receive notice of cancellation. Time and space will not permit the digesting and classifying of all these cases.[11] Those interested will find a number listed in 45 C.J.S. Insurance § 450d(2), p. 95, note 36; Appleman on Insurance, vol. 8, sec. 5014, notes 51 and 54, and of course at ☞229, Insurance, in the West Digest system. While the holdings in all the cases cannot be reconciled, we are impressed by the fact that they fall generally into two main classifications, (a) where the insured is a corporation or business house and the very necessities of the situation cry out for, and the conduct of the parties proclaims, an agency with complete power to represent the company in all matters pertaining to insurance coverage, (b) (and these are numerous) *where the acceptance of notice of cancellation is but one step in the procurement of (other) satisfactory insurance.* In many of these cases the question was whether a (later) policy was valid, and that depended upon whether the first coverage still existed. The "implied authority" in this situation is upheld in order that the broker or agent can carry out his authority to secure satisfactory insurance.[12] But it is further held that where the receipt of notice of can-

9. Appleman, Insurance Law and Practice, vol. 8, sec. 5014, p. 432; 29 Am.Jur., Insurance, sec. 286, p. 266; 45 C.J.S. Insurance § 450d(2), p. 94; Edwards v. Home Ins. Co., 100 Mo.App. 695, 73 S. W. 881.

10. Restatement of the Law of Agency, secs. 3, 34.

11. Pronouncements by appellate courts should be interpreted in the light of the factual situation which was before the court in the particular case under study.

12. See Lavoie v. North British & Mercantile Ins. Co., 85 N.H. 550, 161 A. 376, 162 A. 182; Sterling Fire Ins. Co. v. Comision Reguladora, etc., 195 Ind. 29, 143 N.E. 2; National Union Fire Ins. Co. v. Jenkins, 56 Ga.App. 476, 193 S.E. 90; Orkin v. Standard Fire Ins. Co. of New Jersey, 99 N.J.L. 114, 122 A. 823; Great American Ins. Co. v. D. W. Ray & Son, Tex.Com.App., 15 S.W.2d 223; N. Pelaggi & Co. v. Orient Ins. Co., 102 Vt. 384, 148 A. 869; Firemen's Ins. Co. v. Simmons, 180 Ark. 500, 22 S.W.2d 45; Insurance Underwriters' Agency, etc. v. Pride, 173 Ark. 1016, 294 S.W. 19.

cellation is not for the purpose of replacing with other satisfactory insurance so as to "maintain" the coverage, and the effect of the acceptance of such notice reaches to the end of doing the insured out of his coverage, as was done in this case, then the authority to waive or receive cancellation notice is not implied.[13]

Edwards v. Home Ins. Co., 100 Mo.App. 695, 73 S.W. 881, the case upon which the appellant principally relies, has elements of both classifications above mentioned. The insured was a corporation which had all of its (considerable) insurance in the hands of certain brokers who had blanket authority to keep the property covered up to a certain amount. The brokers had been having difficulty in getting insurance companies to carry the risk. Finally they appealed to the agents of the insurance company for help in getting coverage, and these agents agreed to write policies only on condition that the clause requiring five-day notice of cancellation should be waived. The policies were written, but the companies refused to carry the risk and directed cancellation. The bookkeeper of the company who kept the record of insurance was informed of this cancellation and the policy was taken up. The managing officer of the company was informed of the cancellation, but only the day before the loss. The court held that the brokers were general agents empowered to represent the company generally in its insurance business and as such were authorized to receive notice of cancellation. We think the facts in this case are different from the case be-

fore us. The situation in the instant case is more similar to that in Insurance Co. of North America v. Burton, 147 Okl. 112, 294 P. 796, where it was held the facts were insufficient to imply authority to accept notice of cancellation.

■ Under the facts in this case we cannot say that the trial court was in error in determining that there was no implied authority in Mrs. Jones to receive notice of cancellation as agent for Mayabb.

■ But there is another reason why appellant's contention cannot be sustained. Absent a holding out or apparent authority which is relied upon, no agency for receipt of notice can be implied when the interest of the agent in that respect is adverse to the principal.[14] And even though there be apparent authority if the person relying upon such notice has knowledge, or should have knowledge, that the adverse interest exists, there can be no agency.[15] If the agent is acting for himself adversely to the interests of his principal, he cannot also be acting for the principal, because the two positions are contradictory.

■ In this case we think the evidence is clear that Mayabb had paid his insurance premium, in fact overpaid it. To put it bluntly, Mrs. Jones was withholding the premium money which Mayabb paid in to her instead of paying it over to the insurance company, as it was her duty to do. Her interest was in not getting caught in this. Such interest was adverse and contrary to the idea that she would transmit

13. Lauman v. Springfield Fire & Marine Ins. Co., 184 Cal. 650, 195 P. 50; Tarleton v. De Veuve, 9 Cir., 113 F.2d 290, 132 A.L.R. 343; Westchester Fire Ins. Co. of New York v. Cannon, Tex.Civ. App., 79 S.W.2d 920, 921–922; Stuyvesant Ins. Co. v. Barkett, 226 Ky. 424, 11 S.W.2d 87; K. C. Working Chemical Co. v. Eureka-Security Fire & Marine Ins. Co., 82 Cal.App.2d 120, 185 P.2d 832.

14. 2 Am.Jur., Agency, sec. 379, p. 298; 3 C.J.S. Agency § 269, p. 202, § 262,

p. 196; Merrill on Notice, vol. 3, sec. 1262, p. 242, et seq.; Rolens v. Keller Const. Co., Mo.App., 24 S.W.2d 1077; Trice v. Lancaster, Mo.App., 270 S.W.2d 519; American Sash & Door Co. v. Commerce Trust Co., Mo.App., 25 S.W. 2d 545; Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504.

15. See Restatement of the Law of Agency, sec. 271; Merrill on Notice, vol. 3, sec. 1269, p. 253.

the notice to Mayabb. And, as far as knowledge of the appellant is concerned, the evidence is that at the same time the Williams-Dando Agency sent out some 200 or 250 notices of cancellation of policies brokered by Jones. This we think is sufficient evidence to show that Williams-Dando knew, or at least was put on notice, that Jones was not acting in good faith with the policyholders, and that her interests in receiving any notices were not those of the policyholders, but lay more in concealment of her own misdeeds. And we think it is obvious that the insurer did not rely upon notice to Jones for its cancellation, because it did attempt to send (an abortive) notice to the insured. Having failed to comply with the plain terms of the policy in regard to cancellation, it cannot now escape its liability on such policy.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.