229 S.W.2d 25 (1950)
DYCHE
v.
BOSTIAN et al.
No. 21289.
Kansas City Court of Appeals. Missouri.
February 6, 1950.
*26 W. F. Woodruff, Lucian Lane, Kansas City, for Bostian, trustee.
R. Carter Tucker, John Murphy, Wm. H. Wilson, J. Gordon Siddens, C. Thos. Carr, Kansas City, for Mass. Bond. & Ins. Co.
BROADDUS, Judge.
The question presented here is whether a policy of workmen's compensation insurance issued by the Massachusetts Bonding and Insurance Company, respondent, to the employer, appellant, was in effect on November 7, 1946.
On November 7, 1946, James J. Dyche, claimant, while employed by H. Kelley, doing business as H. Kelley and Sons, as a carpenter foreman, fell from a rafter on a house being built by Kelley at 8218 Grand Avenue, in Kansas City, Missouri, and sustained severe injuries. The employer was within the Workmen's Compensation Act. Mo.R.S.A. § 3689 et seq. On January 25, 1947, said Dyche filed a claim for compensation with the Division of Workmen's Compensation, Department of Labor and Industrial Relations. Thereafter the employer filed an answer denying generally claimant's allegations, and respondent, named in the claim as the insurer, filed its answer denying that it had any policy or policies of insurance covering any liability of the employer in effect on the 7th day of November, 1946.
After hearings, the Referee made an award in favor of claimant, allowing for medical aid $1,040.20 and for permanent partial disability $20 per week for 60 weeks. He also found that "the contract of insurance between the employer and the insurer herein dated March 5, 1946, was in full force and effect and had not been canceled at the time of the injury." The award was against both employer and insurer.
Insurer filed its application for a review before the full Commission, which made an award in favor of claimant and against the employer alone in the exact amount allowed by the Referee, but found that the employer's liability was not insured and that respondent was not the insurer of said employer at the time of the accident. An appeal was duly taken from the final award of the Commission to the Circuit Court, which court entered judgment affirming the final award of the Commission. From this judgment the employer duly appealed to this court.
After the appeal to this court was taken the employer, H. Kelley, was adjudicated bankrupt and William B. Bostian, Trustee in Bankruptcy, was, by stipulation of all parties, substituted for H. Kelley, doing business as H. Kelley and Sons, as appellant herein.
The policy involved herein is styled "Standard Workmen's Compensation and Employer's Liability Policy No UX333357." It is dated March 5, 1946, and was to remain in force for a period of one year unless canceled.
The testimony was that a letter apparently dated October 24, 1946, was sent by Mrs. Kelley to Mr. Frank Altman, of Altman-Singleton and Company. Mr. Altman was local agent for respondent-insurer and had originally written the workmen's compensation policy here involved and also a public liability policy for H. Kelley. The letter requested cancellation of both policies.
Mr. Altman testified that he received this letter requesting cancellation on October 25, *27 1946; that when some one in his office brought the letter to him he said he thought it was a mistake and, he, Altman, didn't want the policies canceled, and that he would get in touch with Mr. Kelley; that on the day he received the letter, October 25, 1946, he called Kelley's office and talked with Mrs. Kelley and told her he thought it was a mistake; that they should keep the policies and that he, Altman, was not going to cancel them until she talked to her husband to be sure that he wanted to cancel them.
Mr. Altman further testified that four to seven days later he again called and talked with Mrs. Kelley and said "please let me know whether you want to cancel as the premium will continue to accrue;" that on a later date Mr. Willer, his bookkeeper, advised him that either Mr. or Mrs. Kelley had called and said Mr. Kelley did not want to keep the policies, to go ahead and cancel them, and Altman then told Willer to send them in immediately because he, Altman, did not want the premium to accrue, and he, Altman, had held the policies on his own volition to try to get Kelley to continue them; that both policies were sent in for cancellation on November 7, 1946, by his bookkeeper to insurer's branch office located in the Scarritt Building, in Kansas City, Missouri.
The letter by which the policies were sent was introduced in evidence as claimant's Exhibit 13. It bears the date of November 7, 1946 and was addressed to "Massachusetts Bonding and Insurance Company, Scarritt Building, Kansas City 6, Missouri," and signed "Altman-Singleton and Company, by Emmett Willer." It stated:
"Re: UX-333357 and MCS-39094-H. Kelley & Sons Please cancel the captioned policies, enclosed herewith, at the request of the assured, as of October 25, 1946, and please obtain for us at your earliest opportunity audit bills up to that date. These policies were returned to us on that date but we have been unsuccessfully attempting to keep them in effect."
The stamp "Massachusetts Bonding and Insurance Company, Received November 8, 1946, Kansas City Branch," appears on the face of the letter. As stated, the accident to claimant, Dyche, occurred on November 7, 1946.
Mr. Altman further testified that he did not cancel the policy here involved but sent it to the branch office of respondent to be canceled, and that the confirmation notice concerning cancellation received by his office from the respondent was dated sometime after November 8, 1946.
Mrs. Kelley testified that after she wrote Mr. Altman a letter requesting cancellation he telephoned her and asked her not to cancel the policies and requested that she talk to her husband and reconsider the matter, saying he would hold the policies in his office; that she had several conversations with Mr. Altman about the matter, and that she finally told him that they could not afford to carry the policies; that on the day after the accident she called Mr. Altman to find out if the policies had been sent in for cancellation; that Mr. Altman called her later and told her that the policies had been stopped at the branch office of respondent and that he then sent her a form of report of accident which she filled out and returned to him.
Mr. Fritz K. Downey, Assistant Manager of respondent's branch office, was produced as a witness in its behalf. He testified about a letter written by the local manager of respondent to its agent, Altman-Singleton and Company, asking the agent to get the insured to comply with certain safety recommendations; that upon receipt of that letter some one in the agent's office wrote a note in long-hand on the bottom stating: "The policy is being returned for cancellation" and sent the letter back to the branch office, where it was received on October 28, 1946.
Mr. Downey further testified that the policies were returned by the agent to the branch office with this letter, but that there was nothing in the letter, itself, and no staple or clip marks on it to indicate that the policies were enclosed or attached. This letter was not identified or offered in evidence. He was then shown Exhibit 13, the letter dated November 7, 1946, and testified that it certainly looked like that was the letter from the company's agent telling the company to cancel the policies. As to *28 his statement that the policy here involved was received by the company on October 28, 1946, he was asked: "How do you account for this letter of November 7 when they enclosed the policy" and he answered: "I do not see how that can happen," and again he was asked "and this other letter (Exhibit 13) you do not have any explanation for that" answering, "I would have to ask Altman-Singleton how that happened. I have no explanation and I will have to admit it looks like some kind of a mix-up."
As the law now stands we are authorized to decide whether the Commission could have reasonably made its findings and reached its result, upon consideration of all the evidence before it and to set aside its decision if clearly contrary to the overwhelming weight of the evidence. Henderson v. Laclede Christy Clay Products Co., Mo.App., 206 S.W.2d 673, and cases there cited.
The policy here involved contained the following provision for cancellation:
"This policy may be cancelled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the Policy Period."
The law is firmly settled that, where a policy contains a specific provision for cancellation by either party, it is binding upon the parties and must be strictly complied with in order to terminate the policy. In Home Insurance Company v. Hamilton, 143 Mo.App. 237, 128 S.W. 273, 274, this court said: "A contract covering a certain period of time, but containing a conditional provision that it might be terminated before that time, will remain effective the full term, unless the condition of termination is fully complied with. And this is especially applicable to an insurance policy containing a provision allowing a cancellation prior to the end of the term of insurance. Chrisman & Sawyer Banking Co. v. Hartford Insurance Co., 75 Mo.App., 310; Van Valkenburgh v. Lenox Fire Insurance Co., 51 N.Y. 465; Hollingsworth v. Germania Fire Insurance Co., 45 Ga. 294, 12 Am.Rep. 579; Home Ins. Co. of Columbus, Ohio v. Curtis, 32 Mich. 402; White v. Connecticut Fire Insurance Co., 120 Mass. 330; Aetna Insurance Co. v. Weissinger, 91 Ind. 297. Those cases represent instances where the insurer sought to cancel, but the rule is equally applicable to the insured." (Italics ours.)
To the same effect are the cases of Home Insurance Company v. Kellett, 217 Mo.App. 368, 266 S.W. 736, Continental Insurance Company v. Phipps, Mo.App. 190 S.W. 994, and Springfield Fire and Marine Insurance Co. v. Parker, Mo.App., 289 S.W. 967.
It is clear that the above provision of the policy for cancellation was not followed by the insured. It required that the insured give written notice to the company, and state in the notice the date on which cancellation was to be effective, and the date so specified must not be less than ten days from the date of the notice. All that the record shows is that a letter, accompanied by the policies, was written by Mrs. Kelley, probably on October 24, 1946, to Mr. Altman. What this letter stated does not appear, as it was not produced or offered in evidence. The most that can be said from the testimony concerning it is that it requested that Mr. Altman have the policies cancelled. There is absolutely no showing that it specified any date as the effective date of cancellation. It is to be noted that the policy here involved was not one in which notice of cancellation generally could be given with a provision that cancellation would then take effect ten days after the date of notice. This policy required that the effective date of cancellation be stated. Such date, to be selected by the insured, might be ten days, fifteen days, thirty days, or any number of days within the policy period, but not less than ten days after the notice. There was no option on the part of insurer to select a date when cancellation was to be effective. The insured, himself, was bound to select and state the effective date. Thus, it is apparent that the *29 policy was not cancelled by the act of the insured alone.
When then, by mutual consent of the parties, did cancellation of the policy occur? A careful study of the record convinces us that it contains no substantial evidence to support a finding that this took place prior to November 8, 1946. The letter of November 7, 1946, stated that the policy was enclosed with a request for cancellation. The letter had stamped upon it the words "Received November 8, 1946." Mr. Altman was asked: "Do you know when you sent them in for cancellation? A. We sent them in on November 7. Q. Who did you send them to? A. To the Massachusetts Bonding and Insurance Company, Scarritt Building."
The evidence of Mr. Downey, insurer's Assistant Manager, when analyzed, does not contradict this. He referred to a letter, not introduced in evidence, written by insurer's manager to its agent, Altman-Singleton and Company, asking the agent to have the insured comply with certain safety regulations. Someone in the Altman-Singleton office, upon receiving this letter, wrote in longhand on the bottom thereof the words: "The policy is being returned for cancellation", and returned the letter to the insurer's branch office where it was received on October 28, 1946. It is merely an assumption on Mr. Downey's part that the policies accompanied that letter. They could not because Mr. Altman testified that from four to seven days after October 25 he talked with Mrs. Kelley asking that he be informed if the policies were to be cancelled. As stated, when shown the letter of November 7, 1946, which recited that the policies were "enclosed herewith" Mr. Downey said: "I would have to ask Altman-Singleton how that happened. I have no explanation and I will have to admit it looks like some kind of a mix-up."
The request of the insured that the policy be cancelled was not accepted and acted upon by the insurer prior to November 8, 1946. Cancellation by mutual consent could not take effect until insurer had actually acted upon insured's proposed cancellation.
As stated in Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co., 75 Mo.App. 310, "The law is that to effect a cancellation there must be an actual cancellation and not a mere intention to cancel." And in 45 C.J.S., Insurance, § 444: "Incomplete negotiations looking toward a contract for cancellation do not effect cancellation. Thus a mere proposal by insured to cancel the policy is insufficient unless accepted by the company." And in Couch, Cyclopedia of Insurance Law, Section 1407, it is said: "Of course, both parties must consent, since the elementary rule of law is, that as both parties must assent to a contract before it becomes binding, so, in the absence of fraud, both must agree to rescind or cancel it before it will cease to be obligatory."
The policy specifically recites that it is "made for the benefit" of claimant. Section 6009, R.S.Mo.1939, Mo.R.S.A., provides with respect to policies of this kind: "No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."
In Rendelman v. Levitt, Mo.App., 24 S.W. 2d 211, loc. cit. 214, the St. Louis Court of Appeals said: "The Metropolitan Company relies upon the cancellation of its policy as the sole ground for a reversal of the judgment in so far as it affirms the award as against it. The Compensation Act (Sections 25, 27, and 28 [Mo.R.S.A. §§ 3713, 3715, 3716]) provides that every employer electing to accept the provisions of the act shall insure his entire liability thereunder, and that the insurer shall be primarily and directly liable to the injured employee; that every policy of insurance against liability under the act shall be in accordance with the provisions of the act; that the same may be enforced by the employee as well as by the employer, and shall be enforceable notwithstanding any default of the employer. Manifestly, an attempted cancellation or rescission of a policy, issued under this act, after an injury to an employee has occurred, though assented to *30 by the employer, cannot defeat the right of the employee to recover on the policy." (Italics ours.)
The evidence shows conclusively that the insurance company's agent refused to cancel the policy and held it without action until November 7, 1946, when he wrote to the company requesting that it cancel the policy; that the company did not receive this request until November 8, 1946. Thus, no finding can reasonably be made except that the cancellation of the policy by mutual consent of the parties could not have occurred earlier than November 8, 1946, and at that time the accident had occurred and the rights of claimant had attached.
Respondent filed its motion to dismiss the appeal herein for the reason that appellant filed no appeal to the Circuit Court from the final award of the Industrial Commission. Appellant filed with us a certified copy of the notice of appeal showing that the same was, in fact timely filed with the Commission. This court, on its own motion, on October 27, 1949, ordered that said copy be incorporated in the transcript. Thus respondent's motion to dismiss the appeal should be and is overruled.
The judgment of the Circuit Court affirming the award of the Industrial Commission is reversed and the cause remanded to that court to be remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.
CAVE, J., concurs.
DEW, P. J., dissents in separate opinion.
DEW, Presiding Judge (dissenting).
I cannot concur in the majority opinion because I believe the insurance contract in question was duly terminated before the injury to respondent Dyche was incurred on November 7th. When the insured returned the policy to the local general agent of the respondent insurance company on October 25th, ordering the cancellation of the policy and repeatedly confirmed it by statements to the agent on the latter's inquiries that the insured did not wish to continue the policy, did not wish to keep it, and could not afford the premiums therefor, that was notice to cancel as soon as possible, which, of course, could not be earlier than ten days after the notice, unless sooner complied with by the insurance company. 32 C.J. p. 1250, note 18. 45 C.J. S., Insurance, § 450. As was said in Hanover Fire Insurance Co. v. Wood, 209 Ala. 380, 96 So. 250, 254: "We think the objection to the form of the notice of cancellation is technical and without merit. It is true the notice declares that the policy `is hereby canceled,' whereas the policy provides that it may be canceled at any time by the company `by giving five days' notice of such cancellation.' Nevertheless such declaration will be intended as operative, according to the terms of the policy, at the end of five days after notice thereof". Any definite date set by the insured in the instant case beyond the ten days would have been for the insured's benefit, and was not availed of and was not desired, as was fully stated to the agent. The effect of the notice was for immediate cancellation, subject only to the minimum ten days' notice to the company, unless sooner complied with by the company. Not only was the ten day notice given, but the company acted upon the notice within that time, the agent notifying the company on October 28th that the policy, which had been returned to him and was in his possession, was being returned for cancellation, and later forwarding the policy to the branch office for its record of cancellation as of the date of October 25th. After the return of the policy by the insured to the agent with notice of termination, together with the verification and explanation thereof made to the agent, and certainly after the lapse of ten days thereafter, the policy stood as canceled and terminated regardless of any corresponding book entries or paper work or inter-office communications thereafter to be done by the company.
The only remaining question is whether or not Altman, the agent, was authorized to receive the policy from the insured for cancellation. The same general rules that apply to principals and agents apply to insurance companies and their agents. 32 *31 C.J. p. 1062, § 139, 44 C.J.S., Insurance, § 149. The knowledge and acts of its agents, within the scope of their authority, are the knowledge and acts of the company. The company had issued the policy solicited by the agent, had sent it to the insured through the agent, who had delivered it to the insured and had collected premiums therefor, as upon other insurance issued by the same company to the same insured. In the instant case the agent, on October 28th, had also replied to the company's notice of its requirements for certain safety provisions to be met by the insured, in connection with the policy in question. The company was dealing with the insured through the agent in all matters pertaining to the policy. He was the company's local general agent. It would appear that under such circumstances it was not only natural and reasonable, but within the scope of his authority, for the agent to receive from the insured the policy returned with the notice of termination and, therefore, that such receipt and notice were binding on the company. 29 Am.Jur. p. 271.
In my opinion the judgment of the Circuit Court should be affirmed.