**FARMERS MUTUAL HAIL INSURANCE COMPANY OF MISSOURI, a Corporation, Plaintiff-Appellant,**

v.

**W. H. MINTON, Defendant-Respondent.**

No. 22264.

Kansas City Court of Appeals.

Missouri.

May 2, 1955.

Carroll N. Bryson, Centralia, for appellant.

Leo J. Kelley, John R. Minton, Kansas City, for respondent.

V. C. ROSE, Special Judge.

Plaintiff below, appellant here, sued defendant below, respondent here, for an alleged assessment, penalties and interest of $200.85 made under a policy of hail insurance issued by plaintiff to defendant together with attorney's fees, and suffering an adverse judgment in due course appealed to this Court. For convenience the parties will hereafter be referred to as plaintiff and defendant.

There is little dispute about the facts. Defendant for many years a practicing physician in St. Joseph, Missouri, owned a farm in Holt County. On a visit to the farm in 1943 a Mr. Crews, an Agent of plaintiff, called on defendant and the latter signed an application for hail insurance in plaintiff Company to become effective for a term of five years beginning May 11, 1943 and at this time paid the agent the policy

fee of $1. The policy was accordingly issued and sent to defendant. Defendant paid the premium assessed for the years 1943 and 1944. At the time defendant sent in the 1944 premium he wrote at the foot of the notice of assessment due which had been sent him by the Company and dated October 6, 1944, the following: "Please cancel for 1945 & future yrs. W. H. Minton." The receipt of which slip of paper with defendant's name, number of the policy and writing thereon of the defendant as quoted is admitted by the plaintiff.

As the result this case must turn upon the sufficiency of the steps taken by the defendant looking toward the cancellation of the remaining term of insurance, we shall now examine the terms of the written application, the policy and By-Laws in evidence. Among other things the application for insurance which was signed by the defendant under date of May 11, 1943, stated, "I agree to pay all just assessments, not to exceed 2½% of the amount of this policy in any one crop season, and be governed by the Articles of Incorporation and By-Laws of the Company in force at this time or that may become in force during the continuance of this insurance, to which Articles of Incorporation and By-Laws reference is had and which are to be taken as Incorporated herein. In case it becomes necessary to collect an assessment by law, I agree to pay a reasonably attorney's fee, and it is agreed that the Company shall not be bound by any representations of the Agent not contained in the contract or the printed matter put out by said Company."

The policy of insurance also in evidence, shown to be identical with the one issued Dr. Minton, discloses that the assessments are provided for as in the application, as well as an attorney's fee and it is also provided that "the Company shall not be bound by any representations of the agent not contained in the contract or printed matter put out by the Company." The Articles of Incorporation of the Company are printed at either side of its face as folded and the By-Laws on the lower part of the back side of the policy. The provision contained in the By-Laws for cancellation is Section 7

thereof as follows: "A policy of insurance issued by this Company may be cancelled by the Company giving five days' notice in writing thereof to the assured, or if the assured shall demand in writing or in person of the Company the cancellation of his policy, the Company shall immediately advise by letter to the address named the amount, if any due as his pro rata share of the losses and in addition the actual expenses incurred since the date of his policy. Upon the payment of such amount and the return of the policy by registered letter, the policy shall be cancelled immediately, but policies may not be cancelled between the dates of March first and September twentieth in any year nor until after one assessment is paid except at the option of the officers of the Company."

Apparently Dr. Minton's request for cancellation of his policy arrived in the plaintiff's office in Columbia on October 6, 1944, as on the slip that date is stamped and on that day plaintiff's secretary wrote a letter to Dr. Minton which is headed in capital letters "Policy Must Be Surrendered To Cancel." Portions of the letter are as follows: "We also acknowledge receipt of your statement you wish to cancel your policy. You have that privilege, under your contract, but the policy must be returned to this office by Registered Mail before March First to be cancelled, as provided in Section 7 of the by-laws printed on the back of your policy. Do Not Overlook This Fact. Should the policy be lost or destroyed, a sworn statement to that effect, that you wish the policy cancelled, and release the Company of further liability thereunder will be accepted in lieu of the policy. If we do not receive the policy, or such a lost policy statement, the policy will continue in force, your crops will be protected for 1945 in accordance with the terms of the policy and you will be required to pay the 1945 assessment under it." The letter concludes with a paragraph urging defendant to consider the matter thoroughly before forwarding in his policy. On the back of this letter is a suggested blank lost policy statement for the use and convenience of defendant as mentioned.

The defendant testified that it was about this time when he discovered that he had lost or misplaced the policy itself, but that Mr. Crews, defendant's agent, had told him when he took out the policy all he needed to do to cancel it was to send in a written notice to the Company. (The latter over the plaintiff's objections.)

The parties had some correspondence about the matter which we will refer to briefly. October 5, 1945, defendant wrote plaintiff that one year ago October 4, 1944, hail insurance policy, check No. 8980 and letter directing cancellation of policy was mailed in and he did not feel obliged to remit for insurance not in effect. On October 16, 1950, plaintiff wrote defendant that although they received word he desired to cancel his insurance in October 1944, it was not done because he had failed to send in the policy and that on May 2, 1945, they had again written him that his policy was in full force. On January 14, 1946, defendant wrote the Agent Crews that the matter had been taken care of by correspondence with the Company previously, that he directed the Company to cancel his policy when he paid the 1944 assessment and that he was unable to return the policy because it was lost. He also stated that no survey of prospective crop locations for 1945 was sent in and asked Mr. Crews to explain defendant's views to the Company. Mr. Crews sent this letter to the Company and it wrote Dr. Minton on January 28, 1946, again setting out its position in the matter at considerable length. In its letters of October 16, 1945, and January 28, 1946, plaintiff stated the amount it claimed as due and offered to cancel if he would pay the same and comply with its cancellation requirements, but such not being done this suit was instituted September 15, 1953.

Plaintiff assigns as error three propositions:

That the finding and judgment of the trial Court was against the weight of the credible evidence, contrary to law and against the law under the evidence; that incompetent, irrelevant and immaterial evidence was admitted over plaintiff's objection and that error was committed in overruling plaintiff's motion to enter judgment in its favor at the close of the defendant's evidence.

The defendant urges that the only thing necessary to effect the cancellation of an insurance policy is a request made by the insured and received by the insurer. That a policy is only evidence of the contract and its termination in no way depends upon the surrender or destruction of such evidence. That a requirement by plaintiff that defendant execute a lost policy statement amounts to a modification of the terms of the insurance contract without the consent of defendant and last, that the law will not require an impossible act.

We believe a brief summary of the evidence taken in part from appellant's statement, fairly stating the facts is that application was made by defendant to plaintiff for insurance on growing crops for a term of five seasons; that plaintiff received the application and issued to defendant its policy covering growing crops which was received by the defendant and that the assessments for 1943 and 1944 were paid. That defendant wrote a note on his remittance slip sent to plaintiff with the 1944 assessment asking cancellation of the policy; that plaintiff immediately sent defendant a letter instructing defendant as to cancellation procedure which letter was received by the defendant. That defendant did nothing further until he received notice of assessment in October 1945 at which time he wrote plaintiff stating he had directed cancellation of the policy one year before which letter contained no reference to the policy being lost; that plaintiff answered this letter on October 16, 1945, still ignorant of defendant's claim the policy was lost and that in a letter to the soliciting Agent on January 14, 1946, defendant first indicated a lost policy and that defendant's letter came to plaintiff from Crews and was answered by plaintiff on January 28, 1946. That defendant was in error when he stated in his letter of October 5, 1945, that he had mailed in his policy. The above sequence of events resolves itself into the sole point of whether or not

respondent had succeeded in effecting a cancellation of the policy by paying the 1944 assessment and giving a written request for cancellation without surrendering the policy in accordance with the terms of the By-Laws of the plaintiff Company.

■ (1) A jury having been waived this case must be reviewed upon both the law and the evidence as in cases of an equitable nature and the judgment will not be set aside unless clearly erroneous. Section 510.310, subd. 4 RSMo 1949, V.A.M.S.; Mo.R.S.A. Sec. 847.114(d); Liberty Mutual Ins. Company v. Mercantile Home Bank and Trust Company, Mo.App., 241 S.W.2d 493, loc. cit. 496.

(2) We find that this is by no means a case of first impression in this state. In the case of Dyche v. Bostian, Mo.App., 229 S.W.2d 25, 28, Judge Broaddus speaking for the court had this to say:

"The law is firmly settled that, where a policy contains a specific provision for cancellation by either party, it is binding upon the parties and must be strictly complied with in order to terminate the policy. In Home Insurance Company v. Hamilton, 143 Mo.App. 237, 128 S.W. 273, 274, this court said: 'A contract covering a certain period of time, but containing a conditional provision that it might be terminated before that time, will remain effective the full term, unless the condition of termination is fully complied with. And this is especially applicable to an insurance policy containing a provision allowing a cancellation prior to the end of the term of the insurance. Chrisman & Sawyer Banking Co. v. Hartford [Fire] Insurance Co., 75 Mo. App. 310; Van Valkenburgh v. Lenox Fire Insurance Co., 51 N.Y. 465; Hollingsworth v. Germania Fire Insurance Co., 45 Ga. 294, 12 Am.Rep. 579; Home Ins. Co. of Columbus, Ohio v. Curtis, 32 Mich. 402; White v. Connecticut Fire Insurance Co., 120 Mass. 330; Aetna Insurance Co. v. Weissinger, 91 Ind. 297. Those cases represent instances where the insurer sought to cancel, *but the rule is equally applicable to the insured.'* (Italics ours.)

"To the same effect are the cases of Home Insurance Company v. Kellett, 217 Mo.App. 368, 266 S.W. 736, Continental Insurance Company v. Phipps, Mo.App., 190 S.W. 994, and Springfield Fire & Marine Insurance Co. v. Parker, Mo.App., 289 S.W. 967." This case was later affirmed by the Supreme Court, see Dyche v. Bostian, supra.

■ (3) In the case of Home Insurance Company v. Kellett, 217 Mo.App. 368, 266 S.W. 736, "It is conceded in this case that the defendant accepted the policy, and that it became a binding contract of insurance between the parties. That being true, neither party could cancel the policy except in the way provided in the policy. * * *" In Home Insurance Company of New York v. Horrell & Cravens, 206 Mo.App. 352, 227 S.W. 830, 831, "Under the terms of this policy the mode of cancellation is expressly provided for, and it is admitted by defendants they did not comply with the terms in this respect. It has been consistently held on this same contract that where the policy provides for a certain form of cancellation the terms as therein provided must be strictly complied with." It would seem that even though the policy provision is unreasonable, its provisions prevail as in the case of Continental Insurance Company of New York v. Phipps, Mo.App., 190 S.W. 994, 995, it is stated that such a provision in a contract "* * * whether reasonable or not, is a valid one which the parties had a right to make and agree to, and therefore it will be upheld. The parties entered into such contract and the courts will not undertake to make a different one for them." Those interested may also consult American Insurance Company v. Dean, Mo.App., 243 S.W. 415, and Brown v. Prudential Fire & Marine Insurance Co., Mo.App., 24 S.W.2d 206. The respondent in this case asserts that the one thing necessary to effect cancellation of an insurance policy is a request made by the insured and received by the insurer, citing the case of Gately-Haire Co. v. Niagara Fire Insurance Company, 221 N.Y. 162, 116 N.E.

1015. We find that the holding in this case was based on a statute of the State of New York which dispenses with the necessity of making a physical return of the policy itself as a condition of cancellation, and that for lack of such a statute in Missouri this case would not apply here. While it does seem to this Court that Section 7 of plaintiff's By-Laws is more favorable to the Company than to the policyholder, in that when the company cancels no return of the policy is mentioned and therefore one wonders if, after all, it is so important to plaintiff, yet under the long and unbroken line of Missouri decisions holding that strict compliance with such provisions is a prerequisite to cancellation we feel obliged to adhere to these rulings. If our legislature should see fit to follow the example of the State of New York a new and different situation would be presented. Defendant urges that the policy is only evidence of the contract and its termination in no way depends upon the surrender or destruction of such evidence. While it may be true that the policy is only written evidence of its contents we cannot agree that under the facts in this case defendant could ignore the uniform rule of plaintiff embodied in the contract. Defendant likewise urges that to require him to execute a lost policy statement amounted to a modification of the terms of the contract without his consent and the law will not require an impossible act. Suffice it to say that this requirement was for the benefit of the defendant, making it possible for him to do that which might be otherwise impossible, and constituted an offer by plaintiff to relieve him of the necessity of doing what defendant refers to as an impossible act, and was an invitation to substitute more favorable treatment for him than was provided for by the strict terms of the contract. There is no question but that had defendant suffered a loss under the policy in the year 1945 the plaintiff would have been liable therefor. This being true he was obligated for the assessment.

██ (4) The plaintiff's agent Crews, being a soliciting agent, had no right to modify or waive any provision of the policy already executed and delivered. Cole v. Kansas City Fire & Marine Ins. Co., Mo.App., 254 S.W.2d 304.

██ (5) While the defense of the statute of limitations was raised by and ruled adversely to the defendant in the lower Court it was not preserved in the briefs and is considered abandoned. See many authorities: 3 Missouri Digest, Appeal and Error, ☞1078.

From what has been said above it follows that we must and do hold that this cause be reversed and remanded with directions to the trial court to determine the amount of the assessment sued upon, with interest from date of demand and any penalties due from the defendant under Section 8 of plaintiff's by laws, to determine a reasonable attorney's fee in plaintiff's behalf, and to enter judgment for plaintiff in the total sum of such amounts.

DEW, P. J., and BROADDUS, J., concur.