Jonathan ELLIOTT,
Plaintiff-Respondent,

v.

Floyd JOHNSTON and Superior
Disposal Services, Inc.,
Defendants-Appellants.

No. 47642.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 26, 1984.

Stephen C. Murphy, Clayton, for defendants-appellants.

Rodney Weiss, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

This appeal arises as the result of a declaratory judgment proceeding under § 527.010 RSMo 1978 which determined rights and duties pursuant to a settlement agreement. We affirm in part and reverse in part.

Plaintiff-respondent, Jonathan Elliott (Elliott) and defendant-appellant, Floyd Johnston, (Johnston) each were 50 percent shareholders and owners of Superior Disposal Services, Inc., (Superior) a Missouri Corporation. In an attempt to resolve differences between themselves, the parties entered into discussions and negotiations. The parties agreed the assets of Superior would be sold with the proceeds being used by Johnston to purchase Elliott's 50 percent ownership of the corporation and to repay certain debts owed to Elliott by Johnston and by the corporation.

Pursuant to this agreement, the sum of $25,000, received as a down payment from Meramec Hauling, purchaser of the assets, was reserved to pay taxes. A dispute arose as to whether this money was reserved to pay federal and state taxes for the year 1981, totaling $7,807.36, or as a reserve for payment of the contingent taxes of Superior. The parties agreed the remainder of the reserve fund would be divided equally. It was further understood another $5,000.00 down payment from the purchaser was to be divided between the parties, if not used as working capital before October 13, 1981. A final disagreement between the parties concerned the distribution of monthly payments from the sale of Superior's assets.

In order to solve the differences, Elliott instituted an action for declaratory judgment. On July 6, 1983, the court issued its order declaring:

1. Under the terms of the Settlement the parties intended that the corporate income tax of Superior Disposal Services, Inc. allocated to the parties was to be computed by taking into account such items as depreciation, unused investment credits, operating losses and capital losses, therefore the Court orders only the actual amount due and paid to the Federal and State governments respectively, namely $7,047.13 and $760.23, is to be charged to the parties in equal shares.

2. Under the terms of the Settlement the parties intended that the $5,000.00 advance payment from Meramec Hauling, if not used by Superior Disposal Services, Inc. as working capital before October 13, 1981, was to be divided equally between the parties, therefore the Court orders Plaintiff is entitled to receive $2,500.00 (or a proportionate amount) if the $5,000.00 or any part thereof, was not used by Superior Disposal Services, Inc. as working capital before the sale of assets was concluded on October 13, 1981.

3. Under the terms of the Settlement the parties intended the procedure to be used for receiving the monthly checks from Meramec Hauling to Superior Disposal Services, Inc. was that such checks were to be forwarded to a third party for

clearance and distribution pursuant to the Settlement Agreement, therefore the Court orders that all such checks are to be forwarded to Rodney Weiss for clearance through a Trust Account and distribution pursuant to the Settlement Agreement.

Appellants, Johnston and Superior, raise four points on appeal. (1) The trial court lacked jurisdiction to enter the declaratory judgment because there was insufficient evidence to indicate a valid and enforceable settlement agreement. (2) The trial court's order does not determine conclusively the rights of the parties nor disposes of the issues. (3) The trial court erred in its determination of the income tax liability of each party. (4) The trial court erred in regard to the procedure for distributing the proceeds from the sale of Superior's assets.

■ Appellants contend in their first point that Elliott failed to prove there was an enforceable underlying contract for the court to interpret. Appellants arrive at this conclusion as a result of both parties submitting separate statements of stipulated facts. We review the evidence in the light most favorable to the plaintiff, with all reasonable inferences to be drawn therefrom, and disregard the defendants' evidence unless it aids the plaintiff's case. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565 (Mo.App.1977).

■ All that is necessary to create an enforceable contract is there be a meeting of the minds and that the terms of the contract be certain or capable of being made certain. *Johnston v. First National Bank and Trust Co. of Joplin*, 624 S.W.2d 500 (Mo.App.1981).

■ In the stipulated facts submitted to the trial court, appellants admit the parties reached "an agreement in principal." Relevant parts include:

During those negotiations, attorneys for the parties exchanged several letters and numerous telephone conversations. *These pieces of correspondence formed the basis for a settlement agreement,*

*construction of which is the subject of this action.* (emphases added).

\* \* \* \* \* \*

Sometime prior to September 1, 1981, the *parties reached an agreement in principal to settle the litigation.* (emphasis added).

\* \* \* \* \* \*

The interpretation of the terms of the settlement contract between Johnston and Elliott ... forms the basis for this suit.

It has long been settled that while courts cannot create an agreement between the parties, a court can interpret ambiguous contracts. As appellants state in their statement of stipulated facts, the contract to be interpreted consisted of several letters and numerous telephone conversations exchanged among the parties and their attorneys.

It is clear from appellants' stipulation and from the correspondence which took place between the parties, that a meeting of the minds did take place and the parties' intentions were expressed with enough certainty to create an enforceable contract. Accordingly, appellants' first point is denied.

■ Appellants' second point alleges error in the amount awarded to Elliott. Specifically, appellants argue Elliott was a 50 percent owner in Superior Disposal Services, Inc. and as such Superior's separate liability should be paid from the proceeds of the sale of assets prior to arriving at the net proceeds to be divided between the parties.

As indicated by the correspondence between the parties' counsel, there was an acknowledged liability of Superior to Elliott in the approximate amount of $17,409.00 and a separate direct liability of Johnston to Elliott in. the amount of $2,750.00.

The trial court, however, did not determine whether certain liabilities owing to Elliott should be paid from Johnston's share of the proceeds alone, or paid from the proceeds before division. Appellants

ask us to make this determination under Rule 84.14.

However, as further indicated by appellants' statement of stipulated facts, Johnston unequivocally agreed to satisfy Superior's liabilities owed to Elliott. Appellants' stipulation states *"Johnston also agreed,* as the second part of the purchase price of Elliott's shares, *to satisfy certain liabilities owed to Elliott. These liabilities totaled $20,159.00."* (emphasis added).

A reasonable interpretation indicates that Johnston agreed to personally assume Superior's debt to Elliott. As a result, Johnston is ordered to pay Elliott $20,159.00 from his share of the proceeds from the sale of Superior's assets.

The division of assets is calculated as follows:

| | |
|---|---|
| $ 30,000.00 | down payment |
| 60,106.18 | principal balance |
| 25,570.22 | interest on principal balance |
| $115,676.40 | net total proceeds |
| −5,000.00 [1] | used for working capital |
| $110,676.40 | |

$110,676.40 divided by 2 = $55,338.20 (one half of net sale proceeds).

### Total Payment Schedule

Elliott

| | |
|---|---|
| $55,338.20 | one-half of net sale proceeds |
| 17,409.00 | corporate debt to Elliott |
| 2,750.00 | direct personal loan from Johnston to Elliott |
| $75,497.20 | total share of proceeds |

Johnston

| | |
|---|---|
| $55,338.20 | one-half of net sale proceeds |
| −17,409.00 | corporate debt to Elliott assumed by Johnston |
| − 2,750.00 | |
| $35,179.20 | total share of proceeds |

■ Appellants' third point alleges error in the amount of money allocated to the parties in reference to the corporate income tax of Superior. Out of the original down payment, the sum of $25,000 was agreed to

1. The foregoing assumes the use of $5,000 of the original down payment was used as working

be withheld as a reserve against income tax consequences. A dispute in interpretation arose between the parties as to whether tax consequences referred to the total income tax costs which would result from the sale of assets not including tax credits ($26,643.16) or whether it referred to the actual tax liability paid by the corporation pursuant to its Federal and Missouri Corporate income tax returns for the year ending March 31, 1982 ($7,807.36).

Appellants allege if the actual tax paid is used an inconsistency results. Appellants argue Elliott is trying to obtain tax credit benefits from Superior while on the other hand not share in Superior's liabilities, in particular the debt owed by Superior to Elliott. This is not the case. As stated previously, Johnston agreed to assume Superior's liabilities. Elliott did not agree to terminate his interest in Superior's tax credits. The "actual tax paid" interpretation is further supported by the correspondence between the parties. The correspondence contains several references relating to "income taxes." A letter from Elliott's attorney dated August 28, 1981, states in pertinent part:

It is my understanding that $25,000.00 in cash will be paid on closing of the sale. A substantial part of that, almost $17,000.00, should be reserved in a separate account *for income taxes which will become due,* as I understand it, on April 15, 1982. (emphasis added).

In another letter from Elliott's counsel:

... said sum to be used *for the payment of taxes* of Superior Disposal Services, Inc., resulting from the sale of assets to Meramec Hauling. (emphasis added).

The "tax liability" referred to by the parties was the amount which would have to be actually paid and approved by the government. The amount was $7,807.36. The trial court did not err in charging this amount to the parties in equal shares.

capital pursuant to the agreement of the parties.

■ Appellants final point professes error in the trial courts determination that the parties intended the monthly checks from Meramec Hauling to Superior be forwarded to Elliott's attorney, Rodney Weiss, for clearance and distribution through a trust account. This interpretation is derived from Weiss' letter to appellants dated October 20, 1981. The letter stated:

The 90 monthly checks of $951.96 from Meramec Hauling to Superior Disposal Service, Inc., are to be forwarded to me and deposited by me in a Trust Account for Superior Disposal Service, Inc.

This letter, by itself, would indicate an agreement regarding the periodic payments.

Appellants, on the other hand, emphasize a letter from their attorney dated October 28, 1981. The letter states in relevant part:

Also, Mr. Johnston and Mr. Breadon have had a meeting in regard to the monthly payments for the assets for Superior Disposal Service, Inc. Mr. Breadon's feeling is that his only obligation in this purchase is to Superior Disposal, Inc. and Floyd Johnston and all future payments will be made to Superior Disposal Service, Inc. Therefore, you will notice that the check that I am enclosing in the amount of $951.96 is drawn on Superior Disposal Service, Inc. since to honor Mr. Breadon's wishes the check he gave us was deposited in the bank and then a new check drawn so that we could conform to the agreement.

Taken in the light most favorable to Elliott, it cannot be held that a meeting of the minds took place in regard to the disbursement of the future payments. Appellant, in the letter dated October 28, 1981, specifically detailed an alternative procedure for disbursement.

Elliott contends the letter of October 28, 1981 is an attempt by appellants to void their agreement. However, as Elliott has repeatedly argued in his brief and at oral argument, the agreement between the parties incorporated *all* letters and conversations. This includes the letter of October 28, 1981. Because the trial court was asked only to interpret the agreement between the parties and not appoint a receiver to handle the periodic payments, the order requiring appellants to forward the monthly checks from Meramec Hauling for clearance through a trust account is reversed.

Judgment affirmed in part and reversed in part.

CRIST, P.J., and SIMON, J., concur.