SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff/Appellant,

v.

STONE & SONS, INC., Richard Stone, Michael Cozart, Earl Christine, Laidlaw Waste Systems Inc., and National Union Fire Ins. Co. of Pittsburgh, Pa., Defendants/Respondents.

No. 58950.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 21, 1992.

David Duree, St. Louis, for plaintiff/appellant.

Edward Vancil, Robert J. Radice, Terese A. Drew, St. Louis, for defendants/respondents.

CARL R. GAERTNER, Judge.

Safeco Insurance Company of America (Safeco) appeals the trial court's judgment in favor of Stone & Sons, Inc., Richard Stone, Michael Cozart, Earl Christine, Laidlaw Waste Systems, Inc. (Laidlaw), and National Union Fire Ins. Co., of Pittsburgh, Pennsylvania (defendants) in Safeco's action for a declaratory judgment to determine whether an insurance policy had been canceled prior to an accident. The trial court entered judgment against Safeco upon motion of the defendants at the conclusion of Safeco's case. We consider this to be a ruling upon the merits of the case. *Wyrozynski v. Nichols*, 752 S.W.2d 433, 436–37 (Mo.App.1988). The record reflects the trial court recognized this procedural principle and entered a judgment with findings of fact and conclusions of law. We view the evidence in the light most favorable to the prevailing party, disregarding evidence in favor of the unsuccessful party. *Elliott v. Johnston*, 673 S.W.2d 807, 809 (Mo.App.1984).

Richard Stone operated a refuse hauling business, Stone & Sons Hauling, out of his

home as a sole proprietor. Jack Kienzle, an independent insurance agent, handled insurance matters for the business. Kienzle arranged with a Safeco agent, Michael Thurman, for Safeco to provide commercial automobile insurance and general liability insurance for the business. In 1985, the two policies of insurance were renewed for the period November 8, 1985 to November 8, 1986. At that time, Richard Stone was named as the insured in the Safeco policies. In December 1985, Stone incorporated his business, and Jack Kienzle had the named insured changed to Stone & Sons, Inc.

On March 11, 1986, Safeco mailed a notice of cancellation of the commercial automobile policy to become effective April 29, 1986. The general liability policy remained in force. The policy required that the company mail or deliver a notice of cancellation to the named insured. However, the notice was mailed to Richard Stone and did not mention Stone & Sons, Inc. Stone testified that he did not receive this notice. Because the premium payments for the insurance policies were on an installment basis, Safeco mailed monthly bills to Stone & Sons, Inc. The monthly bill mailed March 27, 1986, noted one policy had been canceled. No return of premium was paid, but rather the bill indicated an adjustment was to be made by Safeco at the termination of the other policy. Safeco sent a check for unearned premiums to Thurman, who was shown on the Safeco records to be the agent on the policies, on September 24, 1986. Thurman returned the check to Safeco and requested an audit. Finally, on February 23, 1987, a check for unearned premiums was sent to and negotiated by Stone & Sons, Inc.

On May 13, 1986, a truck owned by Stone & Sons, Inc., and driven by employee Michael Cozart, was involved in an accident with a truck owned by Laidlaw and operated by Earl Christine. Stone & Sons, Inc., did not report this incident to Safeco. Two years later on April 7, 1988, Earl Christine filed an action for personal injuries in St. Clair County, Illinois, against Stone &

Sons, Inc., Charles Stone Trash Hauling, Inc.,[1] and Michael Cozart. The suit papers were forwarded to Safeco. Pursuant to its obligations under the policy, Safeco retained an attorney for the defense of Stone & Sons, Inc., and Cozart. Approximately six months after the suit was filed, Safeco issued a reservation of rights letter to Stone & Sons, Inc. In the letter, Safeco agreed to furnish counsel and to defend the lawsuit, but reserved any right to disclaim liability under the policy by reason of the insured's late report of the occurrence. Another year passed before Safeco contended that the policy had been canceled, but nevertheless agreed to continue to furnish counsel and defend the litigation under a reservation of rights. Safeco then initiated this action, seeking a declaratory judgment with regard to its obligations under the policy. In March, 1990, the trial of the personal injury case resulted in a verdict against Stone & Sons, Inc., and Michael Cozart in the sum of $120,000.

■ We review this court tried case under the well-known standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All fact issues without specific findings in the court's order "shall be considered as having been found in accordance with the result reached," Rule 73.01(a)(2), and its judgment should be affirmed if correct on any reasonable theory supported by the evidence. *Richardson v. Collier Building Corp.*, 793 S.W.2d 366, 376 (Mo.App.1990).

## I.

### CANCELLATION

On appeal, Safeco contends the trial court erred when it found the insurance policy was not canceled before the May 13, 1986 accident. Defendants assert that the verified notice of cancellation, addressed to Richard Stone rather than to Stone & Sons, Inc., did not comply with the policy requirements for effective cancellation. Safeco argues, in effect, that sending the cancellation notice to Richard Stone, who was president and fifty percent shareholder, the

---

1. Charles Stone Trash Hauling, Inc., owned by Richard Stone's brother, was a totally separate entity. Its inclusion in the litigation was apparently a mistake.

other fifty percent being held by his wife Debra Stone, to their residence, which was also the office of Stone & Sons, Inc., constituted effective notice.

A condition contained in the policy states that during the policy period: "We may cancel the policy by mailing you at least 10 days notice at your last address known by us. 'We' means the company providing the insurance, 'you' means the person or organization shown as the named insured in ITEM One of the declarations."

■ "The Missouri courts have held, in an unbroken line of decisions, that strict compliance with all the requirements in regard to notice is a prerequisite to cancellation." *Farrar v. Mayabb,* 326 S.W.2d 337, 340 (Mo.App.1959); *See, Farmers Mutual Hail Insurance Co. v. Minton,* 279 S.W.2d 523, 526 (Mo.App.1955); ("where a policy contains a specific provision for cancellation by either party, it is binding upon the parties and must be strictly complied with in order to terminate the policy.") *Dyche v. Bostian,* 229 S.W.2d 25, 28 (Mo.App.), *aff'd,* 361 Mo. 122, 233 S.W.2d 721 (1950). This is so, even when the provision is "unreasonable." *Home Ins. of New York v. Horrell,* 206 Mo.App. 352, 227 S.W. 830, 831 (1921) (cancellation terms in insurance policies must be strictly complied with); *Continental Ins. Co. of New York v. Phipps,* 190 S.W. 994, 995 (Mo.App.1916) ("The parties entered into such a contract and the courts will not undertake to make a different one for them.") In *Farrar,* an incorrectly addressed notice of cancellation was held ineffective. 326 S.W.2d at 340–41. In *Farmers Mutual,* the insured sent written notice of cancellation to the insurance company, but his failure to comply with the policy requirement of returning the policy together with the written notice caused him to remain liable to the company for future assessments. 279 S.W.2d at 526–27.

More recent cases have also required strict adherence to policy and statutory language to determine if an insurer has effectively canceled an insurance policy.

In *MFA Mutual Ins. Co. v. Southwest Baptist College, Inc.,* 381 S.W.2d 797 (Mo. 1964), the court stated that cancellation of an insurance policy must be under the terms of the policy or by the mutual consent of the parties. In that case, a college's new administration canceled all of its existing insurance policies except for one policy that it overlooked. Administrators admitted that they would have canceled that policy if they had known about it. That policy covered a building that was destroyed by fire. The court held that the college's intent to cancel the policy did not suffice to cancel the policy. 381 S.W.2d at 801.

In *Fuller v. Lloyd,* 714 S.W.2d 698 (Mo. App.1986), a husband and wife operated a used car business insured by a "garage policy," with both the husband and wife named as the insured. The parties separated, went out of business, and the wife canceled the insurance. The insurer did not inform the husband of the cancellation, but the wife testified she had informed the husband. In holding that the insurance policy had not been canceled, the court stated that the public policy of preventing cancellation of insurance without notice in order to protect innocent victims of an auto accident from financial loss requires that the insurance company inform both of the insureds. *Id.* at 701.[2]

■ As illustrated by these cases, mere knowledge by one party to an insurance contract of the other party's intent and efforts to cancel the policy does not excuse the failure to comply strictly and literally with the contractual requirements for cancellation. Therefore, we are constrained to reject Safeco's argument that its erroneous mailing of the notice of cancellation to Richard Stone rather than to

**2.** In expressing this public policy, the court referred to § 379.118 RSMo.1986, which applies only to private passenger automobile insurance contracts. Although the statute has no application to the commercial insurance policy involved in this case, the rationale underlying the requirement of strict compliance to insurance policy provisions regarding cancellation is the same.

the named insured is insignificant. Similarly, the "RETURNED PREMIUM VERIFICATION" form, which contained the word "canceled" but merely indicated a premium adjustment to be effected after an audit at the termination of the other insurance policy, although correctly referring to the named insured as Stone & Sons, Inc., does not comply with the policy requirement of a ten-day notice. In view of the earlier change in the named insured such a billing adjustment does not constitute clear and unequivocal notice that no automobile insurance coverage remains in effect.

## II.

### WAIVER AND ESTOPPEL

 Having determined that the trial court's judgment is supported by the evidence and the law, we need not undertake a lengthy discussion regarding defendants' contention that the pleaded affirmative defenses of waiver and estoppel preclude Safeco's reliance on its purported cancellation of the policy. We merely note that in *Brown v. State Farm Mutual Automobile Ins. Co.*, 776 S.W.2d 384 (Mo. banc 1989) the Supreme Court distinguished between the waiver of an insurer's rights and the estoppel of an insurer to assert its rights. The court stated that "conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right" constitutes waiver and there is no need for the insured to show prejudice as a result of such conduct. *Id.* at 388. Safeco clearly and unequivocally demonstrated such a purpose by undertaking and maintaining for almost eighteen months the exclusive defense of the lawsuit against its named insured arising out of an accident covered by its policy.

Safeco's present contention that the policy ceased to exist upon its mailing of the cancellation notice is entirely inconsistent with the undertaking of its policy obligations to provide a defense for its insured. Equally inconsistent is Safeco's attempt to escape liability by asserting a breach of the policy condition based upon untimely reporting of the accident. By assuming its policy right to control the defense of the lawsuit, Safeco precluded its insured from undertaking its own defense and from attempting to negotiate an amicable settlement at the early stages of the litigation. This is sufficient prejudice to estop Safeco from asserting the cancellation of the policy under the terms of which it continued to act.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.