BRANSON LAND CO., a Missouri
Corporation, Plaintiff–
Appellant,

v.

Tim GUILLIAMS and Sherry Guilliams,
Defendants–Respondents.

No. 20455.

Missouri Court of Appeals,
Southern District,
Division One.

July 9, 1996.

Craig F. Lowther, Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully and Housley, L.L.C., Springfield, for appellant.

Stuart H. King, William H. McDonald and Associates, P.C., Springfield, for respondents.

BARNEY, Judge.

Branson Land Company (Plaintiff) sued Tim Guilliams and Sherry Guilliams, husband and wife (Defendants), alleging they breached a "Lease Agreement." Plaintiff sought damages for past rents due, reasonable attorney fees, a real estate commission on re-letting the subject premises and other costs associated with the alleged breach. Defendant Tim Guilliams filed a counterclaim.

The trial court heard the case without a jury and entered judgment for Defendants on Plaintiff's claim, and for Plaintiff on the counterclaim. The judgment included a finding that "there was no meeting of the minds between the parties since there was no definite start date agreed by the parties for the rental of the ... property, and therefore, there was no contract between the parties."

Plaintiff appeals from the portion of the judgment adverse to it on its claim. Defendant Tim Guilliams brings no appeal from the portion of the judgment adverse to him on his counterclaim.

Plaintiff raises two points of error. In its first point it alleges trial court error in concluding that there existed no contract between the parties. In its second point it alleges that the trial court erred in not granting judgment for damages to the Plaintiff for breach of contract.

■ We must affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The evidence shows that at all times pertinent herein Plaintiff owned a shopping center known as the Falls Shopping Center located on Highway 165 Taney County, Missouri. The Falls was being built by Killian Construction and consisted of 20 retail spaces which were to be leased to different tenants. Plaintiff had a management and leasing agreement with Stenger–Sivils Realtors.

Defendants owned a sole proprietorship known as "The Neatest Store in Branson" and in June 1993 Defendant Tim Guilliams contacted Stenger–Sivils Realtors to discuss the possibilities of a lease. The premises were going to be leased for the use of selling clothing and accessories, including accessories peculiar to the Branson area tourist trade.

The lease agreement is dated June 22, 1993. It names Plaintiff as lessor, and Defendant Tim Guilliams (alone) as lessee. It contains the following pertinent recitations:

This Lease Agreement made and entered into this 22nd day of June, 1993, by and between Branson Land Company, a Missouri corporation, hereinafter referred to as "LESSOR" and Tim A. Guilliams, hereinafter referred to collectively as "LESSEE".

1. *PREMISES.* LESSOR leases to LESSEE, and LESSEE leases from LESSOR, that certain premises described as follows:

That part of a shopping center building known as THE FALLS on Highway 165, Taney County, Missouri consisting of approximately 1500 square feet designated as Suite B; together with use in common with the others entitled thereto of the parking facilities and other common areas....

2. *TERM.* The original term of this Lease Agreement and LESSEE's obligation to pay rent hereunder shall commence July 1, 1993 and continue until June 30, 1998. If LESSEE opens for business prior to July 1, 1993, then LESSEE shall pay rent from the date of such occupancy, prorated for any portion of a month. *If the premises is not ready for occupancy by the commencement date, then the lease term shall commence upon the completion of the premises.* At that time, rent will be prorated for any portion of a month. (Emphasis added.)

3. *RENT.* During the original term of this Lease Agreement, LESSEE agrees to pay to LESSOR, ... as rent, the sum of

Two thousand DOLLARS ($2000) per month....

20. *DEFAULT OF THE LESSEE.* ... In the event of any default, LESSOR shall have the right to ... relet the Premises.... LESSEE shall be liable for all reasonable expenses of the reletting, all real estate commissions paid for the reletting....

22. *ENFORCEMENT.* In the event LESSOR obtains legal counsel to enforce any right under this Lease or to obtain relief for the breach of any term, condition or covenant herein, LESSOR shall be entitled to recover from LESSEE the reasonable costs and expenses of such proceedings, including reasonable attorney fees, whether or not a law suite [sic] is actually filed.

The document bears the signature of Defendant Tim Guilliams, notarized June 22, 1993.

According to the evidence, when Defendant Tim Guilliams signed, he added a paragraph 29.3 calling for renewal rights of two five-year terms. Whereupon, Plaintiff's agent changed paragraph 29.3 to provide for a one time, five-year renewal option at $2,200 a month. This was agreeable to Tim Guilliams and initialed by him and Plaintiff's agent.

In addition to making the changes in paragraph 29.3 Plaintiff's agent added paragraph 29.4 (not pertinent to the instant case) and signed the agreement on July 12, 1993, and sent it to Defendants. Defendant Tim Guilliams attempted to make an additional change to paragraph 29.4 and added a new paragraph 29.5 providing for a condition that if the premises were not available for occupancy by September 1, 1993, the rent would be cut by half and if the premises were unavailable by October 1, 1993, the rent would be waived until May of 1994. These changes, however, were not acceptable to Plaintiff and the new language was crossed out and the document was returned to Defendants about July 22, 1993. In late August, 1993, Tim Guilliams returned the lease agreement to Plaintiff. On some date (unclear from the record), Plaintiff received a $2,000 "deposit." Defendant Tim Guilliams entered possession in September, 1993.

Plaintiff began charging rent on September 15, 1993, and presented evidence that the premises were complete on that date. On the other hand, Defendant Tim Guilliams contends that "[t]he subject premises were not complete until November 1, 1993," evidenced by on-going construction at the premises, scaffolding in use, and mounds of dirt in the parking lot during September and October, 1993. The evidence shows that the premises were vacated by Defendant Tim Guilliams around Thanksgiving of 1993 and subsequently re-let to third persons on March 15, 1994.

**I**

In order to be binding, an agreement must be sufficiently definite to enable a court to give it an exact meaning. *Brown v. Childers,* 254 S.W.2d 275, 280 (Mo.App.1953); *Marshall v. Edlin,* 690 S.W.2d 477, 480 (Mo. App.1985); *see also Computer Network, Ltd., v. Purcell Tire & Rubber Co.,* 747 S.W.2d 669, 676 (Mo.App.1988). "Terms of a contract must be certain, or capable of being rendered certain through the court's application of ordinary canons of construction or by reference to something certain; that is, terms of agreement must be sufficiently definite to enable the court to give it an exact meaning." *City of Malden v. Green,* 779 S.W.2d 354, 356 (Mo.App.1989). Even if a contract is ambiguous, it should not be held void for uncertainty if there is a possibility of giving meaning to the agreement. *Cf. Elliott v. Johnston,* 673 S.W.2d 807, 809 (Mo.App. 1984).

In *Marshall,* a custom combiner brought an action against landowners for the breach of a contract to harvest a crop. The defendants in that case argued that the terms of the agreement were too uncertain and indefinite to constitute a binding contract because the starting date was too indefinite. The court, in rejecting defendant's arguments stated that:

Any indefiniteness in the terms was due to the nature of the work to be performed. An exact starting date could not be precisely agreed upon because weather and

other natural forces would affect the crops and the ground for harvesting. . . . All things considered, the terms of the agreement were as definite as the nature of the work would permit.

*Marshall,* 690 S.W.2d at 480; *see also Tennessee Coal, Iron & R.R. Co. v. Sizemore,* 258 Ala. 344, 62 So.2d 459, 463 (1952), where the Alabama Supreme Court held that "[a] contract to make reasonable provision for safety and health, and to install a *proper* ventilating system, is not too indefinite for performance." (Emphasis added.)

■ The salient determination herein is whether the provisions of the purported Lease Agreement were definite and certain as to when the lessee was obligated to begin paying rent. Paragraph two of the instrument provided that where the premises were not ready for occupancy by the "commencement date", originally set at July 1, 1993, then the lease term, i.e., lessee's obligation to pay rent, would commence "upon the completion of the premises." [1] The premises were defined as "Suite B; together with use in common with the others entitled thereto of the parking facilities and other common areas." By Defendant Tim Guilliams' own admissions, through his pleadings, the premises were completed on November 1, 1993. "As a general rule . . . 'allegations or admissions of fact contained in pleadings upon which a case is tried are binding on the pleader.' " *Rauch Lumber Co. v. Medallion Dev. Corp.,* 808 S.W.2d 10, 12 (Mo.App.1991). The evidence further shows that Defendant Tim Guilliams entered upon the premises of Suite B itself mid-month of September 1993. However, construction work in and about Suite B continued through the months of September and October, 1993, and it wasn't until about Halloween when the bulk of the construction projects as related to Suite B and access thereto, either by sidewalks and/or parking lot, had been sufficiently completed.

The court's conclusion that no lease agreement was created between the parties is against the weight of the evidence presented at trial and the trial court misapplied the law.

By the terms of paragraph two of the instrument, the commencement date for the payment of rent in the amount of $2,000 per month was the date of "completion of the premises." The evidence shows that the premises, i.e., Suite B, together with the parking facilities and other common areas, were completed November 1, 1993, and major obstructions from work crews, building materials, scaffolding, dirt and debris had been substantially removed.

■ However, Defendant Sherry Guilliams is not bound by the provisions of the Lease Agreement since she did not sign the Lease Agreement. "There is no agency between a husband and wife merely because of the marital relationship and neither is empowered to act as agent for the other simply because they are married." *Mahurin v. St. Luke's Hosp.,* 809 S.W.2d 418, 422 (Mo.App. 1991). In determining if an implied agency existed between a husband and wife concerning a subject property and the construction of a dwelling thereon, the court in *Kenny's Tile & Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 466 (Mo.App.1984), stated that a review of the evidence was necessary to determine if the wife's activity amounted to a joint participation. There is no significant proof of a joint participation by the wife in the instant case. Plaintiff presented no evidence that at any time Sherry Guilliams reviewed the Lease Agreement or was aware of its terms and provisions.

■ Plaintiff presented little evidence of Defendant Sherry Guilliams' intended participation in the business to be operated out of the leased premises. There was an ephemeral showing that her name appeared on some business stationery. Excerpts from the deposition of Defendant Tim Guilliams were presented at trial. In response to the question, "And you were in this lease on behalf of yourself and your wife, is that correct?" He answered, "That's correct." Otherwise, there is no evidence showing that she expressly or impliedly authorized her husband to act as her principal. *See Fuller*

---

1. Paragraph 29.2 (Special Stipulations) provided for a July 22, 1993, completion date. However, this date too had passed by the time Defendant

Tim Guilliams returned the lease instrument with its modifications.

**528**

v. *Lloyd,* 714 S.W.2d 698, 701 (Mo.App.1986); *Nichols v. Prudential Ins. Co. of America,* 851 S.W.2d 657, 661–62 (Mo.App.1993).[2]

## II

In review of Plaintiff's second allegation of trial court error we conclude that the trial court erred by not granting Plaintiff a judgment for damages against Tim Guilliams for breach of contract. We have previously concluded that Sherry Guilliams was not bound by the terms of the contract.

At trial Plaintiff presented proof of a lease between it and Defendant Tim Guilliams encompassing the rights and obligations of the parties thereto. Plaintiff also presented evidence of a breach of the lease and the damages resulting from the breach. *See Lick Creek Sewer Sys., Inc., v. Bank of Bourbon,* 747 S.W.2d 317, 324–25 (Mo.App.1988). Since the evidence shows that the rental term commenced on November 1, 1993, and the premises were re-let on March 15, 1994, Plaintiff is entitled to rentals for four and one-half months at $2,000 per month, minus a deposit of $2,000 yielding a sum of $7,000. Attorney fees have been stipulated by the parties at $5,200 and the evidence is uncontroverted that the real estate commission for reletting amounted to $7,200.

The portion of the judgment denying Plaintiff's claim against Defendant Sherry Guilliams, and the portion of the judgment denying the counterclaim of Defendant Tim Guilliams against Plaintiff are affirmed. The portion of the judgment denying Plaintiff's claim against Defendant Tim Guilliams is reversed, and the case is remanded to the trial court with directions to enter a judgment in favor of Plaintiff against Defendant Tim Guilliams for $19,400 plus costs herein.

PARRISH and CROW, JJ., concur.

---

2. "[A]pparent authority is created by the conduct of the principal which causes a third person reasonably to believe that another has the authority to act for the principal. A finding of apparent authority requires evidence that a principal has communicated directly with the third party or has knowingly permitted its agent to exercise authority." *Nichols,* 851 S.W.2d at 661 (citation omitted). "Thus actual authority is created by the principal's manifestations to the agent, whereas apparent authority is created by the principal's manifestations to a third party." *Id.* at 661–62.