MARY J. BROQUEDIS, Appellant, *v.* EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN and/or EMPLOYERS MUTUAL FIRE INSURANCE COMPANY, Respondent.

Fourth Department, October 31, 1974.

Jaeckle, Fleischmann & Mugel (J. Edmund de Castro, Jr., of counsel), for appellant.

Ohlin, Damon, Morey, Sawyer & Moot (James McAskill of counsel), for respondent.

GOLDMAN, J. At the close of all the evidence the trial court granted defendant insurance company's motion to dismiss the complaint. We cannot agree with this result.

On September 30, 1969 plaintiff and her then husband were issued a liability policy covering a Buick automobile in which both of them were " named insureds ". The policy also included a Jaguar automobile and both cars were registered in the name of the husband alone. In February, 1970 the Broquedises separated and the separation agreement gave the wife various property including the Buick automobile. By oversight, the husband did not at that time transfer the registration to plaintiff, although she was given possession of the Buick. In May, 1970 plaintiff sought to register the Buick in her name and through her lawyers asked defendant Employers for a certificate of insurance (FS-1) in her name alone. The FS-1, which defendant issued, still only listed the husband's name and plaintiff was informed that she would have to obtain a signed transfer from her husband. This was not possible, for the husband was out of the country. Plaintiff continued her efforts and sent an affidavit to the Department of Motor Vehicles stating that she was the true owner of the Buick and asserting the unavailability of the husband, and enclosed a new FS-1 in the husband's name which she had received from defendant. Plaintiff secured a registration in her name alone which was later declared by the department to have been issued in error because plaintiff's name was not on the FS-1.

The husband returned to this country in June, 1970 and requested defendant to change his address to his place of business, the old policy address being the home of the plaintiff. Prior to the expiration of the policy the renewal request notice was sent to the husband to his business address. The husband then requested defendant to change the policy indorsement

deleting coverage on the Buick and deleting the plaintiff as a "named insured". No notice of either deletion was sent to the plaintiff. After the renewal of the policy and on October 31, 1970 the plaintiff, while driving the Buick, was involved in an accident. Plaintiff's lawyers immediately notified defendant, Employers, of the accident. Defendant's claims supervisor informed plaintiff that defendant would not provide coverage for the accident because the Buick had been deleted from the policy as of the date of issuance of the renewal policy. He further admitted at trial that there was nothing in the company's file to indicate that the plaintiff had been notified of the deletion of her automobile or of her name from coverage. Shortly thereafter an injury suit arising out of the accident was started against plaintiff, whereupon she instituted the instant action for a declaratory judgment to determine her rights under the policy issued by defendant.

The declarations of this standard liability policy listed upon it two insured persons by name, the first, Pierre L. Broquedis, and the second, Mary Josephine Broquedis. Until the deletion by defendant of the plaintiff as a "named insured", she was fully covered by the policy. Inasmuch as plaintiff at the time of the accident was not then a "resident of the same household" as her former husband, she could no longer claim coverage under that provision of the policy. However, this has no bearing on the result, for she had been listed by name as a "named insured". Defendant's deletion of plaintiff's name in effect was a cancellation of the coverage which the policy formerly provided for her. It is clear that a liability policy containing more than one insured person represents a separate obligation of the insurance company to protect and indemnify each of the insured persons. "The reason is that under the terms of the policy, reasonably construed, the obligation of the company to each assured is separable and a breach of condition or warranty by one assured does not terminate the obligation of the company to another assured" (*Wenig* v. *Glens Falls Ind. Co.*, 294 N. Y. 195, 202; see, also, *Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.*, 305 N. Y. 243, 249). The policy specifically provides that "the insurance afforded under Part 1 applies *separately* [emphasis supplied] to each insured against whom claim is made or suit is brought". Under "Definitions" the policy in defining the word "insured" repeats the company's obligation as to coverage by stating that "the insurance afforded under Part IV applies separately to each insured". It follows that the unilateral act of one "named insured" with-

out notice to the other "named insured" cannot cancel or terminate the obligation of the insurance company to the second "named insured". The only reference to cancellation in this context is the statement in the policy under "Cancellation" that "the insured named in Item 1 of the declarations by surrender thereof to the company" may cancel the policy. Thus, the right of cancellation as to the plaintiff was hers alone and could not be exercised by her former husband. It would, of course, be in defendant's self-interest to construe the cancellation clause to permit cancellation of one "named insured" by another "named insured". Such construction would not only be strained but would be completely unjustified. The cases recognize, and we have formerly so held, that in construing the provisions of a policy "literal compliance with the provisions of the policy and statutes is the rule and any ambiguity in language is strictly construed against the insurer [citing cases and texts]" (*Government Employees Ins. Co.* v. *Mizell,* 36 A D 2d 452, 454).

The right of an insurance company to cancel an insurance policy is strictly circumscribed by statute and decisional law. Section 167-a of the Insurance Law as it existed at the time of the accident prohibited insurance companies from terminating liability coverage except for specific reasons, none of which applied to appellant (L. 1968, ch. 771). This section provides in part in paragraph (e) of subdivision 1 that in terminating coverage upon the renewal term of a policy that "such policy may be terminated at the expiration of any annual period upon giving forty-five days' notice of non-renewal prior to such anniversary date". Not having complied with this requirement, the termination of coverage of the plaintiff, a "named insured", was a nullity.

Respondent correctly asserts that section 313 of the Vehicle and Traffic Law lends little support to plaintiff's position. It is true that defendant did not comply with the 20-day notice provision, but the application of that section is contingent upon the filing of a certificate of insurance, and in this case the only certificate on file was in the former husband's name. However, defendant's citation of *Providence Washington Ins. Co.* v. *Security Mut. Ins. Co.* (43 A D 2d 213) and *Matter of Orefice (MVAIC)* (28 A D 2d 854) in support of its position is not well-founded. In both of those cases the Second Department properly held that the insurance companies were excused from mailing termination notices, for "section 313 never came into play, because the cancellation was by the insureds, not the insurer"

(*Providence Washington Ins. Co.*, p. 217). In the instant case the plaintiff never canceled coverage; the defendant mistakenly relied on the deletion request by the former husband and defendant wrongly terminated plaintiff's coverage as a "named insured" in violation of the notice requirements of section 167-a of the Insurance Law.

In a very real sense, there is a public policy and interest involved which transcends all other considerations, namely, the protection of innocent victims of motor vehicle accidents from financial loss. It has been invoked in various fact situations, such as to deny cancellation of a policy for nonpayment of premium where the insurer failed to notify the insured (*Tomala* v. *Peerless Ins. Co.*, 20 A D 2d 206, affd. 14 N Y 2d 862; *Connecticut Fire Ins. Co.* v. *Williams*, 9 A D 2d 461), and to hold the company liable where the policy had lapsed but the company failed to notify the insured of the necess-'y of renewing the policy (*La Barre* v. *Nationwide Mut. Ins. Co.*, 16 A D 2d 842). This public policy underlying the regulation of automobile liability insurance was expressed by us in *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176, 181, affd. 9 N Y 2d 655) in the following statement: "Once a certificate of insurance under section 93-b has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions. Many common-law contractual rights are restricted by the statute". (And see *Motor Vehicle Acc. Ind. Corp.* v. *Continental Nat. Amer. Group Co.*, 35 N Y 2d 260.)

The plaintiff had in her possession at the time of the accident a seemingly valid automobile registration and an insurance policy listing her as a "named insured" and her Buick car as a covered automobile. Although not determinative of the legal question, long before the accident the plaintiff notified the defendant by correspondence from her attorneys of her ownership of the Buick. Defendant's failure to notify plaintiff of the deletion of the Buick and of herself as a "named insured" cast liability on defendant to defend and indemnify plaintiff for the accident in which she was involved on October 31, 1970.

Plaintiff requests not only attorney's fees and expenses which she incurred in defending the action brought against her, but also reasonable attorneys' expenses which she incurred in bringing this action for a declaratory judgment. In considering this question we find an interesting dichotomy in the law of New

York State, as expressed in *Johnson* v. *General Mut. Ins. Co.* (24 N Y 2d 42) and *Doyle* v. *Allstate Ins. Co.* (1 N Y 2d 439). In *Johnson* the court asserted the governing principle in this statement at pages 48–49: "The *Doyle* case (*supra*) does indeed stand for the proposition that the duty to defend and indemnify under standard policy provisions is confined to actions in which the insured may be cast in monetary damages. It also stands for the proposition that expenses incurred in an action to establish insurance coverage are not recoverable". Thus, plaintiff is entitled to recover the litigation expenses she incurred in defending herself in the accident litigation but she may not recover her expenses for the instant litigation.

The judgment should be reversed, the motion to dismiss the complaint denied and judgment declared in favor of plaintiff.

MARSH, P. J., MOULE, CARDAMONE and MAHONEY, JJ., concur.

Judgment unanimously reversed on the law and facts with costs, motion to dismiss complaint denied and judgment declared in favor of plaintiff.