ALLSTATE INSURANCE COMPANY, Respondent, v PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant, et al., Defendants. (Action No. 1.)

JULIA ROSARIO, Respondent, v PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant, et al., Defendants. (Action No. 2.)

In the Matter of NATIONWIDE INSURANCE COMPANY et al., Respondents, v SESIT SANCHEZ et al., Respondents, and PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant. (Action No. 3.) (And Another Action.)

First Department, May 22, 1986

**APPEARANCES OF COUNSEL**

*Norman H. Dachs* of counsel *(Brian J. Sauer* with him on the brief; *Shayne, Dachs, Stanisci & Corker,* attorneys), for appellant.

*Joseph F. Spencer* for Nationwide Insurance Company, respondent.

*Carl Radin* of counsel *(Mitchel & Radin,* attorneys), for Julia Rosario, respondent, and *Julio Jiminez,* defendant.

**OPINION OF THE COURT**

Ross, J.

The parties to this appeal as well as our own legal research indicate that this case presents us with an appellate issue of first impression: Did the Prudential Property and Casualty Insurance Company validly cancel a policy of insurance, which had been issued to two named insureds, who lived together at the same address, by mailing one notice of cancellation addressed to both insureds at the policy address?

On September 19, 1981, at about 8:00 P.M., a five-car automobile collision, allegedly occurred in the northbound lanes of Bruckner Boulevard, in The Bronx. The accident resulted in personal injuries as well as property damage.

It appears that, in substance, the accident happened when: (a) a vehicle owned by Mr. Jose Ortega and operated by Mr. Misael Ortega was stopped, and the Ortega vehicle was allegedly struck in the rear by a vehicle owned and operated by Mr. Antonio Martinez; (b) thereafter, the Martinez vehicle was then allegedly struck in the rear by a vehicle owned and operated by Mr. Eliano Sanchez; (c) subsequently, the Sanchez vehicle was then allegedly struck in the rear by a vehicle

owned by Ms. Brigida and Mr. Julio Jiminez, who were brother and sister, and the Jiminez vehicle was operated by Mrs. Julia Rosario (Mrs. Rosario); and (d) finally, the Jiminez vehicle was then struck in the rear by a vehicle owned by Ms. Kay Martin (Ms. Martin) and operated by Mr. Harry Jennison (Mr. Jennison).

At the time of the accident allegedly the insurance coverage was as follows: (a) the Sanchez vehicle was insured by the Nationwide Insurance Company (Nationwide); (b) the Jiminez vehicle was insured by the Prudential Property and Casualty Insurance Company (Prudential); (c) the operator of the Jiminez vehicle, who was Mrs. Rosario, resided with her husband, Mr. Raul Rosario, and he owned an automobile, which was insured by Government Employees Insurance Company (GEICO); and (d) the Martin vehicle was insured by the Allstate Insurance Company (Allstate).

As a result of the accident, four separate legal actions were started, to wit: (a) action No. 1 was commenced by Allstate in Bronx County against defendants Prudential, GEICO, Nationwide, Motor Vehicle Accident Indemnification Corp. (MVAIC), and Mr. Julio Jiminez, and, in that action, Allstate seeks a declaratory judgment that it has no obligation to defend and indemnify its insureds; (b) action No. 2 was commenced by Mrs. Rosario in Bronx County against defendants Prudential, GEICO, and MVAIC, and, in that action, Mrs. Rosario, in substance, seeks, in pertinent part, to collect lost wage (no-fault) benefits denied by Prudential, upon the ground that it had allegedly validly canceled the policy of insurance issued to its insureds: Ms. Brigida and Mr. Julio Jiminez; (c) action No. 3 was commenced by Nationwide in New York County against defendants Sesit Sanchez, Ms. Sylvia Sanchez, Mr. Eliano Sanchez, and Prudential. In that action, Nationwide seeks a declaratory judgment against its insureds, Sanchez, after they demanded arbitration, pursuant to the uninsured motorist provision of the Nationwide policy. The uninsured motorist arbitration was demanded by Sanchez, in view of the fact that Sanchez, intending to bring action against Jiminez and Rosario for personal injuries, learned of Prudential's cancellation of the insurance policy of Ms. Brigida and Mr. Julio Jiminez, which thereby allegedly rendered the Jiminez vehicle uninsured; and (d) action No. 4 was commenced by Allstate in Bronx County against defendants Ms. Martin, Mr. Jennison, Mr. Misael Ortega, Mr. Jose Ortega, Mr. Antonio Martinez, Ms. Elizabeth Martinez, Mr. John Rivera, Mr. Eliano Sanchez,

Mrs. Julia Rosario, Mr. Sesit Sanchez, Ms. Brigida Jiminez, Mr. Miguel Fernandez, Ms. Marabel Rosario, Mr. Siliva Cruz, and Ms. Sylvia Sanchez. Action No. 4 is almost identical to action No. 1, insofar as Allstate seeks a declaratory judgment in both actions; but action No. 4 differs from action No. 1 in that Allstate brings action No. 4 against all of the operators, owners and passengers of the five vehicles involved in the accident.

Following institution of the four actions, in October 1984, Justice Irwin M. Silbowitz granted the motion of counsel for Allstate for a joint trial of the four actions, since they substantially involve common questions of law and fact.

A stay of arbitration was granted in action No. 3, pending a trial on the issue of whether the vehicle owned by Ms. Brigida and Mr. Julio Jiminez was insured at the time of the accident.

Thereafter, a nonjury trial took place on that issue. At that trial, it was conceded that Ms. Brigida and Mr. Julio Jiminez each owned their own automobile, lived at the same address, and both automobiles were insured by Prudential in the same policy. In order to cancel the policy for failure to pay the premium, Prudential sent one cancellation notice to both Ms. Brigida and Mr. Julio Jiminez, at the policy address. Trial Term, in substance, held that this single cancellation notice was invalid, since Ms. Brigida and Julio Jiminez were each entitled to a separate cancellation notice, even though they lived together at the same address, and were both named as insureds in the same policy.

We disagree.

After our review of the record, we find these facts to be significant:

1. By application to Prudential, dated April 24, 1980, Ms. Brigida and Mr. Julio Jiminez applied for a single policy of insurance to cover their separate automobiles;

2. In response to this application, Prudential issued a single policy, which contained in the place on the policy designated for the named insured, the names "Jiminez, Brigida and Julio";

3. The only address provided to Prudential by the insureds was set forth on the policy and it reads: 1119 Mile Square Road, Yonkers, New York;

4. Thereafter, all written communications between Prudential and Ms. Brigida and Mr. Julio Jiminez, pertaining to such

things as all endorsements, notices of premium due, changes in the policy, etc., were sent to their policy address;

5. From the date of the application until the date that the cancellation notice was sent out, nothing had taken place such as a change of address, in marital status, or otherwise, to cause Prudential to change the manner in which it had been corresponding with the insureds or to mail the cancellation notice any differently than it had mailed any other communication to the insureds; and,

6. The address appearing on the policy was the only address that the insureds ever provided to Prudential.

Vehicle and Traffic Law § 313 (1) (a) entitled: "Notice of termination", reads, in pertinent part, as follows: "No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days *after mailing to the named insured at the address shown on the policy* a notice of termination by regular mail except where the cancellation is for non-payment of premium in which case fifteen days notice of cancellation by the insurer shall be sufficient" (emphasis supplied).

Based upon the record, we find that Prudential's notice of cancellation was valid, since it was in strict compliance with the plain meaning of Vehicle and Traffic Law § 313 (1) (a), in view of the fact that this notice was sent "to the named insured at the address shown on the policy" *(see, Matter of Liberty Mut. Ins. Co. [Stollerman],* 70 AD2d 643 [1979], *affd* 50 NY2d 895 [1980]). The Court of Appeals stated in *Patrolmen's Benevolent Assn. v City of New York* (41 NY2d 205, 208 [1976]) that: "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature *(Matter of Petterson v Daystrom Corp.,* 17 NY2d 32, 38; *see, Matter of Carr v New York State Bd. of Elections,* 40 NY2d 556), and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used *(Bender v Jamaica Hosp.,* 40 NY2d 560; *New Amsterdam Cas. Co. v Stecker,* 3 NY2d 1; *Meltzer v Koenigsberg,* 302 NY 523; *Matter of De Peyster,* 210 NY 216)."

We also find that the holding in the case of *Broquedis v Employers Mut. Liab. Ins. Co.* (45 AD2d 591 [4th Dept 1974]) is inapplicable to the factual situation herein.

In substance, the facts in *Broquedis (supra),* involved: the

issuance of one policy to a husband and wife, which policy mentioned two cars which were both originally registered only in the husband's name, and the policy listed both the husband and wife as insureds; thereafter, the husband and wife entered into a separation agreement, and, pursuant to that agreement, the wife was given possession of one of the cars; the husband, after the separation agreement was in effect, requested the carrier to change the address on the policy to his place of business, which was a different address from that of the home of the plaintiff wife; as a result of changing the policy address, the husband, prior to the expiration of the policy, received the renewal request notice, while the wife received no notice; thereafter, the husband then requested the carrier to: (a) delete coverage from the policy concerning the automobile given to the wife, and, (b) delete the wife as a "named insured"; the carrier gave the wife no notice of these deletions; after the policy had been renewed, based upon the deletions, the wife was involved in an automobile accident; when notified of the accident, the carrier denied coverage, in view of the fact, as mentioned *supra,* that the wife and her automobile had been deleted from the policy; and, the Fourth Department found that the carrier's "failure to notify [the wife] of the deletion of the [automobile] and of herself as a 'named insured' cast liability on [the carrier] to defend and indemnify [the wife] for the accident" *(Broquedis v Employers Mut. Liab. Ins. Co., supra,* at p 595).

The instant case, as mentioned *supra,* is distinguishable from *Broquedis (supra).* For example, in the instant case: the insureds at all relevant times occupied the same dwelling place, and were not living apart; neither insured at any relevant time notified the carrier of a change of address from that listed in the policy; the notice of cancellation of coverage did not result from the act of a named insured, but rather it resulted when the carrier canceled coverage for nonpayment of premiums; and, while in *Broquedis (supra)* there is evidence that the carrier did not follow the statutory mandate in canceling the wife's coverage, in the instant case the record clearly supports the conclusion that Prudential strictly complied with the statutory mandate in canceling the insureds' coverage.

In summary, we find that, in view of the facts in the instant case and the applicable legal authority, Prudential validly canceled the subject policy by mailing one notice of cancellation addressed to both insureds at the policy address.

Since Prudential mailed the cancellation notice on June 15, 1981, with an effective date of cancellation of July 5, 1981, we find that the Jiminezes have waived their rights concerning the nonpayment of premiums, in view of the fact that they did not oppose the cancellation in timely fashion. As mentioned *supra,* the date of the accident was September 19, 1981. After reviewing the evidence, we find that "Where, as here, the proof exhibits an office practice and procedure followed by [Prudential] in the regular course of [its] business, which shows that the [notice] of cancellation [has] been duly addressed and mailed, a presumption arises that [the notice has] been received by the insureds" *(Nassau Ins. Co. v Murray,* 46 NY2d 828, 829 [1978]). In view of the fact that the record of trial indicates that the insureds conceded that the notice of cancellation was sent to them by Prudential, we further find that there is no issue upon which to remand this matter to Trial Term.

Accordingly, the judgment of the Supreme Court, Bronx County (Irwin M. Silbowitz, J.), entered March 20, 1985, which, *inter alia,* declaring invalid the notice of cancellation sent by defendant Prudential Property and Casualty Insurance Company (Prudential) to the insureds, Ms. Brigida and Mr. Julio Jiminez, is unanimously reversed to the extent appealed from, and as limited by the briefs, on the law and on the facts, judgment is granted to Prudential, and it is declared that Prudential's notice of cancellation is valid, with costs.

KUPFERMAN, J. P., SANDLER, CARRO and WALLACH, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on March 20, 1985, unanimously reversed to the extent appealed from and as limited by the briefs, on the law and on the facts, judgment is granted to Prudential, and it is declared that Prudential's notice of cancellation is valid. Appellant shall recover of those submitting briefs one bill of $75 costs and disbursements of this appeal.