Donald FULLER and Nancy Fuller, Plaintiffs,

v.

Darrell J. LLOYD, Third Party Plaintiff-Respondent,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Third Party Defendant-Appellant.

No. WD 37525.

Missouri Court of Appeals, Western District.

June 17, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1986.

Application to Transfer Denied Sept. 16, 1986.

Wendell E. Koerner, Jr., Brown, Douglas & Brown, St. Joseph, third party defendant-appellant.

Thomas O. Pickett, Pickett & Raynes, for Darrell J. Lloyd, Trenton, for third party plaintiff-respondent.

Donald & Nancy Fuller, plaintiffs pro se.

Before MANFORD, P.J., and PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

The Fullers brought suit against Darrell Lloyd for damages resulting from an automobile collision. Darrell filed a third party petition against USF & G for damages for failure to defend the Fuller suit. The suit by Fuller against Darrell was reduced to judgment and no appeal has been taken from that judgment.

The court held a separate bench trial on Darrell's suit against USF & G and entered

judgment in favor of Darrell for $10,000 actual damages, $10,000 punitive damages, $14,500 in attorney fees, and ordered USF & G to hold Darrell harmless on the judgment for $25,000 entered in favor of the Fullers. USF & G contends Darrell was not covered by insurance for the Fuller judgment, the award of punitive damages was erroneous, the award of actual damages was unsupported by the evidence, and the award of attorney fees was excessive. Affirmed in part and reversed in part.

There is little dispute as to the facts. Darrell Lloyd and Louise Wilson were married in September of 1978. Darrell was a used car salesman in St. Joseph and Louise owned a beauty shop in Albany. After they were married they lived in Louise's home in Albany.

Soon after their marriage, the Lloyds started a used car business in Albany. Louise supplied the capital and Darrell was responsible for operating the business. The Lloyds purchased cars under a floor-plan financing agreement obtained from a bank in Albany. In July of 1980 the Lloyds purchased an insurance policy from USF & G for the term of one year. The policy was titled "garage policy" and listed the named insured as Darrell J. Lloyd and Louise I. Lloyd. No business name was listed. The coverage column on the face of the policy listed, by symbol, coverage under the policy for any auto. No provision in the policy provided that covered vehicles must be owned by the garage business or must carry dealer tags. A premium was paid at the time the policy was issued, but the final premium was to be. determined after an audit.

In August of 1980 Darrell became upset because Louise's daughter was driving one of the automobiles and fired a gun at the car while the daughter was in it. No one was injured but the bullet hit the fender of the car. Thereafter, the Lloyds separated and Darrell was charged with assault. The assault charge received publicity in the local paper. The agent who had written the USF & G policy read about the incident and placed a copy of the newspaper article in the Lloyd's file. As a result of the separation and criminal charge, Darrell left the Albany area. Louise closed the used car business by selling the remaining cars and trucks. Darrell took one of the trucks and had a title issued to himself and purchased the license tag.

On October 7, 1980, Louise asked the local insurance agent to cancel the garage policy. The agent sent the original policy which Louise had given him to the USF & G office in Kansas City and requested that the policy be cancelled. It is conceded that neither the local agent nor USF & G gave any notice to Darrell that the policy was being cancelled. The next premium on the policy was due four days after it was cancelled. As a result of the cancellation Louise received a $94 credit on an insurance policy covering automobiles taken from the business and which she and her daughter had titled in their names.

Louise testified that she told Darrell after the policy was cancelled that he was driving an automobile which was not covered by insurance. Darrell denied that Louise had told him that the insurance had been cancelled and the trial court by its findings found that Louise had not told Darrell that the insurance had been cancelled.

In February of 1981 Darrell was involved in an automobile accident with the Fullers. As a result the Fullers filed suit against Darrell. Darrell requested USF & G to defend but USF & G stated that the policy had been cancelled and there was no coverage at the time of the accident. Thereafter, Darrell obtained an attorney who filed an answer to the Fuller suit and a third party petition against USF & G in which it was claimed that USF & G had wrongfully cancelled the policy. The petition sought actual and punitive damages and a judgment that USF & G hold Darrell harmless from the Fuller law suit.

The Fuller's claim against Darrell was severed from Darrell's claim against USF & G. On the Fuller claim the court entered judgment after a bench trial in favor of the Fullers against Darrell in the amount of $25,000.

■ USF & G first contends that its policy did not cover Darrell for the Fuller accident because such policy had been cancelled by Louise. As noted above the named insured in the policy was Darrell and Louise. The general rule is that insurance on jointly owned and jointly insured property cannot be cancelled by one owner without the consent of the other. 17 Couch on Insurance 2d § 67:118 (1983). In *Broquedis v. Employers Mutual Liability Insurance Company of Wisconsin*, 45 A.D.2d 591, 360 N.Y.S.2d 735 (1974), the policy insuring an automobile named both the husband and wife as insureds. The parties separated and the husband thereafter requested a policy endorsement to delete the automobile which had been given to the wife and to delete her as a named insured. The wife was not notified of this action. The court held that the policy remained in effect as to the wife. Among its reasons for so holding, the court cited the public policy of preventing cancellation of insurance without notice to the insured in order to protect innocent victims of automobile accidents from financial loss. In short, because of the possibility of an automobile causing injury or damage to others an automobile liability insurance policy protects not only the owner but the public as well.

■ Missouri has a similar public policy embodied in § 379.118, RSMo 1978, which requires an insurer who proposes to cancel a policy of automobile liability insurance to send notice by certified mail to the insured of its intended action at least thirty days prior to the cancellation. It is conceded in this case that USF & G did not send Darrell any notification that it was cancelling the policy. Darrell was a named insured and as such is clearly covered by § 379.118. USF & G under that section was required to send him notice by certified mail at his last known address of the proposed cancellation. Both under the general rule and under § 379.118 USF & G was required to give notice to Darrell that it was cancelling

the policy. Failure to do so results in continued coverage under the USF & G policy of the automobile driven by Darrell.

■ USF & G advances the theory that Louise cancelled the policy on behalf of Darrell because she was acting as his agent. There is no evidence that Darrell had given Louise express authority to cancel the policy. There was no agency between Louise and Darrell merely . because of the marital relationship and neither was empowered to act as the agent for the other simply because they were married. *Dickey Co. v. Kanan*, 537 S.W.2d 430, 434[5, 6] (Mo.App.1976). USF & G further contends that because Darrell had left and Louise was financially interested in the business, Louise was clothed with apparent authority to act for Darrell in cancelling the policy.[1] The agent who wrote the policy for USF & G and who requested its cancellation at the insistence of Louise knew Darrell had left town because of the altercation between Darrell and Louise's daughter. Apparent authority arises when the principal places an agent in a situation where persons of ordinary prudence are justified in presuming the agent has authority to act. *Houston v. Groth Enterprises, Inc.*, 670 S.W.2d 178, 180[9–11] (Mo. App.1984). It cannot be said that Darrell placed Louise in a position which would justify the insurance agent for USF & G in presuming Louise had the authority to cancel the insurance. To the contrary the facts known concerning the relationship between Louise and Darrell would give rise to the opposite presumption from that of apparent agency. An antagonistic separation would not support a presumption that one spouse had the authority to act for the other. It follows that the policy was not cancelled pursuant to notice to Darrell and therefore remained in force at the time of the accident.

■ USF & G next contends the award of punitive damages was erroneous. That award of damages was based on Darrell's theory that USF & G was liable for wrong-

1. After pleading guilty to assault, Darrell was placed on probation. One of the conditions of probation was that he leave Gentry County. The agent who wrote the policy was aware of this condition and therefore knew that Darrell had not left the county voluntarily. Obviously the validity of that condition is not involved here.

ful cancellation. While it is doubtful a cause of action for wrongful cancellation of an insurance policy exists, it is unnecessary to the resolution of this issue to decide that question. As heretofore found and as found by the trial court, the policy remained in force and thus there could be no damages for cancellation when the policy had never been cancelled as to Darrell. The punitive damage award cannot stand.

 USF & G contends that the evidence is insufficient to support the award of actual damages of $10,000. Darrell testified that following the accident he was unable to satisfy the Motor Vehicle Safety Responsibility Act because he could not show he had insurance since USF & G denied coverage. As a result he lost his driver's license for one year and was forced to use public transportation when available or find someone else to drive him. He stated this made it almost impossible to hold a job. Darrell did not rely on any specific loss of wages but rather relied on general damages of loss of his driver's license and the consequent inability to travel freely. When an insurance company refuses to defend an insured the company becomes liable for damages which flow from the refusal to defend. *Landie v. Century Indemnity Co.*, 390 S.W.2d 558, 562[3] (Mo.App.1965). There is no doubt that Darrell was damaged by the loss of his driver's license and it was within the providence of the court to assess damages for this loss. It cannot be said that in view of the evidence the actual damages award of $10,000 was unsupported or excessive.

USF & G also complains that the award of $14,500 for attorney fees is unsupported by the evidence. Although the court made findings of fact it made no finding concerning attorney fees, but simply entered the judgment.

 Upon the refusal of an insurer to defend its insured the insurer becomes liable for attorney fees incurred by the insured in defending an action. *Centennial State Bank v. S.E.K. Construction Co., Inc.*, 518 S.W.2d 143, 151[10] (Mo.App. 1974). Darrell's attorney adduced evidence that up to the entry of the judgment in favor of Fuller he had billed 142.10 hours to his representation of Darrell at $50 per hour, for a total of $7,105. After the Fuller judgment Darrell's attorney charged another 127.20 hours for a total of $6360. However, attorney fees incurred in bringing suit against USF & G for damages for failure to defend are not recoverable against USF & G. *Broquedis*, 360 N.Y. S.2d at 740[6]. From the evidence it is apparent that the court awarded attorney fees for both the defense of the Fuller suit and this suit against USF & G. It is apparent that the attorney fees for the judgment is excessive. The evidence will support only an award for attorney fees for $7,105.

The judgment for actual damages of $10,000 and that USF & G hold Darrell harmless as a result of the judgment rendered against him in favor of Fuller is affirmed. The judgment for attorney fees is reversed and the court is directed to enter judgment for attorney fees in the sum of $7,105. The judgment for punitive damages is reversed.

All concur.